[Crim. No. 3887.   Second Dist., Div. One.   Aug. 2, 1945.]

THE PEOPLE, Respondent, v. ROBERT F. VAUGHN, Appellant.

Robert F. Vaughn, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, and Everett W. Mattoon, Deputy Attorney General, for Respondent.

YORK, P. J.—On September 28, 1944, the District Attorney of Los Angeles County, filed a second amended information containing six counts, the first three counts of which charged defendant with the commission on April 11, 1944, of the offenses of kidnapping, rape, and assault by means of force likely to produce great bodily injury upon Mrs. Marion Davis. Counts 4 and 5 charged kidnapping and assault by means of force likely to produce great bodily injury committed by defendant on May 15, 1944, against Helen Rogers. Count 6 charged a violation on April 22, 1944, of the Deadly Weapon Act, and in addition, defendant was charged with two prior convictions of felonies, i.e., burglary and perjury. He admitted the prior conviction of the crime of perjury, and the jury found him guilty on all six counts of the said information; that he was armed at the time he committed the offenses charged in counts 1, 2 and 3, and that he had suffered the prior conviction for the crime of burglary and had served a term of imprisonment therefor. This appeal is prosecuted from the judgment of conviction and also from the order denying the motion for a new trial.

Appellant appears in this court in propria persona, and makes many specifications of error which, he urges, entitle him to a reversal of the judgment and the order appealed from.

With respect to the offenses with which appellant was charged in the first three counts of the said information, Mrs. Davis testified that she was employed as a mail clerk at the Terminal Annex, United States Postoffice at Los Angeles, and left there at 2:30 a.m. on April 11, 1944; that she boarded a streetcar at Alameda and Macy Streets and went to Fifth and Spring Streets, where she transferred to a "U" car, from which she alighted at Washington Street and Central Avenue; that she proceeded to walk a block and a half to her home

at 1232 East 20th Street; that when she reached the house next door to her home, she was accosted by appellant, who had stopped his automobile in the street; that he ran toward her, aiming his gun at her and forced her into his car, on the pretext that she was a woman named Rosa, who had some money belonging to him and that he was taking her to the police station; that after driving for twenty or thirty minutes, he stopped his car and accomplished an act of sexual intercourse with Mrs. Davis, against her will and without her consent, whereupon he drove her back to her home and left her there about 4:30 a.m. Later that morning Mrs. Davis, accompanied by a friend, reported the occurrence to the police, who took her to the police department hospital for an examination.

Willie Jones, who occupied an apartment in the same building in which Mrs. Davis lived, testified that around 3:20 in the morning of April 11, 1944, he was awakened by the voices of a man and a woman "talking awfully loud," and immediately thereafter he heard an automobile drive off; that he did not recognize the voices and did not hear what was said; that about an hour later, Mrs. Davis knocked on the door of his apartment; that she was crying and her knees were bruised, and at that time she related to him what had happened to her.

With respect to counts 4 and 5 of the said information, Mrs. Helen E. Rogers testified that in May of 1944, she was working at the Margold Cafe, 5259 South Central Avenue, and on May 14th she left there at 11:30 in the evening, walked to 51st and Central where she boarded a streetcar, later transferring to a bus in which she rode to Jefferson and San Pedro Streets. Within a block of this intersection, San Pedro curves into Avalon, and as the witness proceeded along Avalon toward 35th Street, a man "walked up toward me and stopped just before I reached the corner (of Avalon and 35th Streets) and asked me could I direct him to a person by the name of George Wright. . . . I told him no. . . . I continued to walk, and as I turned the corner, the gentleman stepped a little behind me and grabbed me." It was then about 12:05 a.m. of May 15th. Continuing, Mrs. Rogers testified that "When he grabbed me I screamed, and as I started screaming he grabbed me around my neck and started choking me and dragging me at the same time toward the car which was parked on 35th Street facing Avalon. . . . He was pushing and pulling me toward this car. . . . He had both hands around my neck . . . choking me, and I was screaming all at the same time.

. . . When he grabbed me he pinned my arms to my side. . . . I was on my feet until I reached the grass part of the pavement . . . about four feet (from the car). . . . As I reached the grass part I fell down on my knees by the force of his pushing me, dragging me over there to the car door . . . when he got me to the car door he turned my neck loose to open the door, holding me with one arm. Well, I was on my knees and I went, I fell onto the ground, with one of my knees, my right knee, to be exact, under me. I reached down and grabbed one of my shoes and pulled it off and struck him . . . somewhere around his temple, the side of his head. . . . When I struck him he struck me . . . on my forehead, just above my left eye." By this time appellant had the door of his car open and had pushed the witness partly inside the car, but she continued to struggle whereupon appellant struck her again, stunning her and breaking her glasses. She then "started screaming and crying and begging him not to strike me again, and whimpering, telling him I would go with him if he would not hurt me any more. . . . I grabbed his tie and in that way tried to choke him. . . . He was bending over me, still trying to get me in the car. . . . I asked him to please let me get my shoes. It was then I realized both of them were off. . . . He told me he would get my shoes, but for me to turn his God damn tie loose, which I did, and he raised up and over me as if to go and get my shoes, and I rolled out of the car, and when I rolled out of the car I was half way on the curbing off the street, and half way in the street—not underneath the car, but just enough off the street that I wasn't lying completely on the sidewalk. He jumped over me and into the car and drives off and leaves me lying there."

In the meantime, the witness Cleophos Mack was on his way home from his girl friend's house, and in company with another boy, was sitting in a car near Jefferson and San Pedro, a short block from 35th and Avalon, when he heard "a woman's screams." He jumped out of the car and ran from Jefferson to 35th Street where he observed a man dragging a woman toward a car; the woman "was rolling on the ground when I saw her." When the witness Mack and his friend were within 10 or 11 feet of the automobile, "the man turned around and ran and got in the car and drove off. . . . He drove right past me and I got the license number and I saw the man," whom he identified as being the appellant. "I

went over and helped the lady up, and I picked her pocket book up, and her glasses, and her shoes, and I took her home (a distance of 30 or 40 yards). Her stockings were torn, her heels of her shoes were sort of bruised, and her glasses broken, and her blouse was torn, and she had a hicky on her head.'' When Mrs. Rogers reached home, the police were called and the witness Mack gave them the license number of appellant's car.

The prosecutrix Davis testified upon cross-examination, that the next time she saw appellant after April 11, 1944, was around 5:15 p.m. of May 15th; that she was sitting at Central Avenue and Washington Street waiting for a streetcar when she saw him pass in an automobile; that she was between 15 and 18 feet from him, got a good look at him and immediately recognized him as the man who had forced her into his car on April 11th; that she took the license number of his car and called the police. She further testified that the car which appellant was driving on May 15th stopped for the signal and drove on after the light changed, and that appellant did not see her; that when she identified appellant at the police station, four or five prisoners, all colored men, were lined up and she was brought into the room in which they were standing and made her identification of appellant to the police officers, McGruder and Broady.

The violation of the Deadly Weapon Act, charged in Count 6, was established by admissions of appellant and the testimony of the witness Chester Spencer to the effect that appellant on April 22, 1944, pawned a Colt's .38 caliber revolver, number 44325, at the pawn shop where the witness worked at 4368 South Central Avenue, and the original pawn ticket and the revolver were admitted in evidence as People's Exhibits 1 and 2. Appellant admitted that the signature on the pawn ticket was in his own handwriting and that he wrote it on April 22, 1944, and that he personally took the gun to the pawn shop; that he brought the gun from Texas on March 20, 1944, and kept it in his trunk in Los Angeles from that date until April 22, 1944, when he carried it to the pawn shop. He also admitted having been convicted of the crime of perjury in the State of Texas in December of 1938.

There is no merit in appellant's first specification of error, that the offenses charged against him should have been by indictment instead of information. (Const., art. I, § 8; *People* v. *Flannelly,* 128 Cal. 83, 86 [60 P. 670].)

■ Appellant's complaints that he was denied a fair and impartial trial, that the rules of evidence were disregarded, that the witnesses called by the State were prompted and coached, that there was prejudice on the part of the trial court, and that he was not properly represented by defense counsel, are not supported by reference to any particular instance or instances. However, a careful examination of the entire record fails to substantiate such claims, but as a matter of fact discloses that appellant was ably represented and that he had a fair and impartial trial.

■ It is claimed that the corpus delicti was not established as to the charge of rape, in that the prosecution "did not make a showing to prove the substance of the crimes." The corpus delicti of the crime of rape consists of "an act of sexual intercourse accomplished with a female not the wife of the perpetrator," where the victim "is prevented from resisting by threats of great and immediate bodily harm, accompanied by apparent power of execution. . . ." (Pen. Code, § 261, subd. 4.) ■ These elements were established by the testimony of the prosecutrix Davis, it being settled law that the uncorroborated testimony of a prosecutrix is sufficient to sustain a conviction of rape. (22 Cal.Jur. 399 and cases there cited; *People* v. *Gidney,* 10 Cal.2d 138, 143 [73 P.2d 1186]; *People* v. *Akey,* 163 Cal. 54, 56 [124 P. 718].) In *People* v. *Gallagher,* 108 Cal.App. 128, 129 [291 P. 626], the court stated as follows: "The first point made for reversal is that there was no testimony proving the corpus delicti of the offense alleged. A review of the testimony of the complaining witness reveals that she testified that she had sexual intercourse with the defendant at the time and place set forth in the information. This testimony completely answers the appellant's contention. The argument of appellant likewise, that he was convicted upon the uncorroborated testimony of the complaining witness furnishes no ground for a reversal of the judgment. A review of the cases cited in 22 California Jurisprudence, page 399, shows clearly that if the jury accepts the testimony of the complaining witness as true, nothing further is required to sustain a conviction. The cases cited are all one way and it is unnecessary to refer to any authorities other than those cited in California Jurisprudence to which we have referred."

In the instant case, however, there was corroboration of

the testimony of the complaining witness by the doctor who examined her immediately after the alleged attack, and also by the chemist who analyzed the smears taken by the doctor from the vaginal canal of the prosecutrix.

The claim that penetration was not proved and that no male spermatozoa was produced ignores the testimony of the prosecutrix Davis and the corroborating testimony of the doctor and chemist hereinbefore mentioned.

Appellant urges that the prosecution violated section 1025 of the Penal Code when they branded· him an ''ex-convict during the trial procedure of the gun act, before prosecuting the First, Second, Third, Fourth and Fifth Counts of said Information.'' Sections 969 and 969a of the Penal Code require that all known previous convictions of felonies must be charged in the indictment or information and the defendant required to plead thereto. In the instant cause, the information charged appellant with two prior convictions. He admitted one, that of perjury, but he denied that he had previously been convicted of the crime of burglary. It is only when an information charges a defendant with the commission of a felony and also charges a previous conviction *which is confessed by the defendant,* that the charge of such previous conviction cannot be read to the jury nor alluded to at the trial. (Pen. Code, §§ 1025 and 1093.) Hence, in the procedure followed at the trial in the instant case, there was no violation of section 1025, because appellant having denied the prior conviction of the crime of burglary, it became necessary to establish such prior conviction in connection with Count 6 of the information which charged a violation of section 2 of the so-called Deadly Weapon Act to wit: ''. . . no person . . . who has been convicted of a felony under the laws of the United States, of the state of California, or any other state . . . shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person.'' (*Deering's Gen. Laws,* Act 1970.)

With respect to the claim that the evidence was highly improbable, it was held in *People* v. *Asavis,* 27 Cal.App.2d 685, 688 [81 P.2d 595], that ''We are not directed to, nor do we find in this record, anything that would justify this court in stamping the story of the prosecutrix as inherently unbelievable or even improbable. As was said in *People* v. *Haydon,* 18 Cal.App. 543 [123 P. 1102], 'A statement, to bear upon its

face the brand of improbability, or which may be said to be unbelievable *per se*, must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances disclosed, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do.' " The stories of the two complaining witnesses with respect to what occurred upon the two occasions hereinbefore set forth, which were corroborated by other witnesses, instead of being highly improbable, were entirely reasonable and probable.

The claim by appellant that he was not sufficiently identified does not find support in the record. As to the commission of the offenses against Mrs. Davis on April 11th, she had ample opportunity to scrutinize her assailant, both when he was standing over her threatening her with his gun, and later in the automobile, when, in addition to his other features, she noted his gold tooth. She had no difficulty in picking him out of a group of colored men in a line-up at the police station. As the perpetrator of the offenses committed against Mrs. Rogers on May 15th, he was positively identified not only by Mrs. Rogers, whom he approached under the street light on Avalon near 35th Street, but also by Mr. Mack, who rescued her.

Appellant also argues that there was lack of resistance on the part of prosecutrix Davis as to the offenses committed against her on April 11th. The testimony of Mrs. Davis is replete with evidence of her attempt to flee from appellant in order to reach her home, also of her pleas to be released when caught and her extreme fear of the revolver used by appellant in the accomplishment of his purpose.

As a final point urged as a ground for reversal of the judgment herein, appellant asserts he established alibis in that he proved "by witnesses where he was at the time and during the alleged attacks." With respect to the offenses committed after three o'clock on the morning of April 11, which included the offense of rape, his testimony, which is uncorroborated by any of the three persons in whose company he claims to have been—was that he was at the Little Harlem Cafe until about 1:30 a.m., and that "at the early hours of the morning I was at home." No corroboration of this testimony was offered, and no further attempt was made to establish an alibi for the offenses committed between the hours

of 3:20 and 4:30 of that morning. As for the offenses committed shortly after midnight on May 15th, he testified that he went to Miss Smith's house at about 11:15 p.m. on May 14th and "stayed there two or three hours," returning to his home from there. Miss Smith testified that appellant came to her house and remained two hours, but on cross-examination when asked whether anything unusual occurred to make her note the time he left, she replied, "No; I just estimated that he stayed there for about two hours." In this connection, appellant urges that he "proved he was employed and was engaged in working during those times whereupon the attacks took place," is not supported by the record. The timekeeper of the Southern Pacific Company testified that the records of the company showed that appellant appeared at work at 10 a.m., on May 15th, working on the train which went to San Francisco on that day, and returned to Los Angeles at 1:00 p.m. on May 16th. No offenses were charged as having been committed during any of this period. The crimes nearest in time to the period so testified to were perpetrated shortly after midnight on May 15th. Appellant was in Los Angeles at that time, and did not report for work until over nine hours thereafter. The question of the claimed alibis, which are weak at best, involves the credibility of the witnesses and the weight to be accorded their testimony, therefore the determination of the trier of the facts is conclusive upon this court.

One discrepancy in the testimony of Mrs. Davis is pointed out in respondent's brief, to wit: This witness testified that she saw appellant at about 5:15 p.m., of May 15th at Central and Washington, where she was sitting on a seat waiting for the streetcar and saw him pass; that he was in the same car that she saw and rode in on April 11th and she took the license number of it; that she was 15 to 18 feet from him and recognized him, and also saw a bottle of lotion in the car which she had noticed when she was in the car on April 11th; that she was sure of the lotion and sure of the identity of the man and that she put the license number down and called the police. Thereafter, the timekeeper of the Southern Pacific Railroad Company testified from his records that appellant reported for work at 10 a.m. of May 15th and went to San Francisco on a train that day, returning to Los Angeles on May 16th at 1 p.m. From this it would appear that Mrs. Davis was

either confused or mistaken as to the date upon which she saw appellant pass her in his car.

An examination of the record herein discloses that appellant was accorded a fair and impartial trial, remarkably free from error, and that the evidence presented was sufficient to support the verdicts of the jury finding appellant guilty, as charged.

For the reasons stated, the judgment and the order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.