[Crim. No. 894.   Fourth Dist.   Sept. 26, 1955.]

THE PEOPLE, Respondent, v. WILLIAM RALPH
BENNETT, Appellant.

Ara Ohanesian, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, and James D. Loebl, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—Defendant and appellant was charged in Count I with rape of Mrs. Tow, by force and fear, on January 25, 1955; in Count II, with robbery of Mrs. Karaian; and in Count III with assault with intent to commit rape upon her on December 15, 1954. It was also charged that he suffered two prior felony convictions of forgery and second degree robbery. He pleaded not guilty to the charges and admitted the prior convictions. A jury trial resulted in a guilty verdict on all three counts and on the robbery count it was determined to be robbery of the second degree. After denial of a motion for a new trial this appeal followed.

The gruesome testimony of Mrs. Tow clearly shows facts sufficient to constitute the charge contained in Count I. As to this count, defendant claims insufficiency of the evidence in reference to her identification of the defendant as being the perpetrator of the crime. He endeavored to establish an alibi as to his presence at the scene on the night indicated. The complaining witness identified defendant as being the person who boarded the bus on a downtown street corner just after the complaining witness took it and was therein seated. She testified she observed him in a general way enter and go to the back end of the bus; that there were only two other persons on the bus at the time; that she "had a good view of him as he came in the door"; that when the bus stopped near her home she left by way of the front door and believed the defendant left by the rear door; that as the bus departed defendant walked up to her and spoke to her; that there was a bright street light at that intersection; that she kept walking toward her home and that within a 10-foot distance from the place where she left the bus defendant came up from behind her and said: "You don't want me to shoot you in the back do you?"; that she slowed up and defendant said: "I don't want your money, I want your body . . . I have got a gun"; that she thought he had a knife in his hand concealed in his coat pocket at the time; that she talked with him momentarily and told him that her home was in the immediate vicinity and that she was going into it; that he said "if I did he would put a bullet in my back" and ordered her to go into the near-by bushes; that by reason of his threats

and actions an act of sexual intercourse was accomplished; that he said he lived only a few blocks from there and if she kept her mouth shut she could then go in her home.

She testified that she was able to recognize his physical appearance; that he had rather long wavy hair, dark trousers, and short length light tan zipper-type jacket; that she did not notice whether he wore a mustache but that she particularly observed his posture and the way he carried himself, his weight, size and probable height, and the way he combed his hair, and that there was no mistake about that; that the police showed her numerous photographs and that she finally selected from them the defendant's photograph and also positively identified him in a lineup of three other individuals at the sheriff's office; that she identified him at the preliminary examination even though he was wearing dark glasses and did not then wear a mustache; and that she then, and at the trial recognized the defendant as the man who perpetrated the crime.

The testimony of the complaining witness, if believed by the jury, was sufficient identification. (*People* v. *Vaughn,* 70 Cal.App.2d 439, 447 [161 P.2d 293]; *People* v. *Avery,* 64 Cal.App.2d 850, 854 [149 P.2d 758].)

In the same neighborhood on the night of December 15th, 1954, defendant spoke to Mrs. Karaian about a block from her home and said: ''Come here, I want to talk to you.'' She told him he did not know her but he insisted that he did and asked if she was a virgin. She testified he said he was going to have an act of sexual intercourse with her; that he was armed and if she screamed or moved he would kill her; that he attempted to reach for her and she stepped over under the street light and was clenching her wallet; that she inquired of defendant if he wanted to rob her and he said he did not want her money but he wanted her; that she said she would rather he take her money and not attack her; that about that time a neighbor came by in his car and defendant said he would kill her if she attempted to seek help; that Bennett snatched the money and ran away; that she screamed for help and ran into a near-by home; that the neighbor gave chase and apprehended defendant and took him into custody; that she then identified him as her attacker; that he then wore a mustache and also had on a zipper jacket in which he had his hand as though he was holding some form of weapon. A $20, $5.00, and several $1.00 bills were taken from her. After the officers arrived they found

a $20, a $5.00, and several $1.00 bills rolled up by a fence at the place where defendant was apprehended. The grass around that spot was damp but the paper money was not.

Defendant took the witness stand and finally admitted talking to the complaining witness that night but said it was under the belief she was a prostitute known to him and that he "propositioned her." He said that the complaining witness offered him money and even though he told her he did not want it "she threw it down and so eventually I picked it up and walked off." He admitted at that time he did not know her. He denied having a gun and also denied threatening her. He claimed at no time did he have any intent to assault his claimed victim or threaten her. He also denied a similar encounter with another named woman on another occasion in that same locality in 1949.

The prosecution then presented, on rebuttal, this other woman who described a similar occurrence with defendant. She positively identified him as the person involved. The defendant entered a plea of guilty to that charge in 1949, but now claims that his plea was entered under some claimed promise of the prosecutor that his term of imprisonment would be reduced to a county jail sentence, and denied the attack. The evidence sufficiently supports the verdicts reached on Counts II and III.

■ The last claim, which was also made on the motion for new trial, is that he was cross-examined in relation to his conviction in 1949, in violation of his constitutional rights, and that no proper foundation was laid for the admission of the testimony pertaining to that charge, citing *People* v. *Peete*, 28 Cal.2d 306 [169 P.2d 924].) Under that decision the evidence here produced was admissible for the purpose of showing a common design, scheme or plan, particularly as to defendant's method of approach, and for the purpose of disproving defendant's claim of no intent to commit the crime charged. No prejudicial error or abuse of discretion appears in denying defendant's motion for new trial. (*People* v. *McGarry*, 42 Cal.2d 429, 432 [267 P.2d 254].)

Judgment and order affirmed.

Mussell, J., and Shell, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.