[Crim. No. 7785. Second Dist., Div. Four. Feb. 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
BURROUGHS, Defendant and Appellant.

James Burroughs, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Elizabeth Miller and Mario A. Roberti, Deputy Attorneys General, for Plaintiff and Respondent.

BURKE, P. J.—Defendant James Burroughs was charged by an information filed by the District Attorney of Los Angeles County accusing him of the crime of rape in violation of section 261, subdivision 4, of the Penal Code, and alleging prior felony convictions of grand theft on April 21, 1952, and assault with a deadly weapon on March 27, 1953. Defendant pleaded not guilty and denied the prior convictions. Defendant, personally, and all counsel waived trial by jury. The cause was submitted on the testimony contained in the transcript of the preliminary hearing with each side reserving the right to offer additional evidence.

At the commencement of the trial the judge directed that the record show that pursuant to the stipulation he had read the transcript of the testimony taken at the preliminary hearing. Additional evidence offered at the trial consisted of the testimony of two witnesses for the People. Defendant testified in his own behalf and the prosecuting witness was recalled and testified in rebuttal. Defendant was found guilty.

A probation report was ordered. Defendant's motion for a new trial was denied. The prior convictions were found true. Probation was denied and defendant was sentenced to state prison for the term prescribed by law.

Defendant petitioned this court for the appointment of counsel to represent him on the appeal. This court, having made an independent investigation of the record and having determined that it would be neither advantageous to defendant nor helpful to the court to have counsel appointed, denied the application, whereupon defendant prosecutes this appeal in propria persona.

Defendant and Justin G. Scott visited the home of Jeanette Taylor and her husband on Christmas Eve 1960. Mrs. Taylor was cleaning the house when the two persons arrived. Her husband had left at 7 o'clock that morning. Scott and Matthew Jones, a roomer with the Taylors, left the house, taking two of Mrs. Taylor's children with them. The third child was left outside of the house. Mrs. Taylor was cleaning her children's bedroom and defendant was in the living room. Mrs. Taylor testified that defendant went to the back of the house where she was cleaning and kept bothering her. He wanted to mop and to sweep but Mrs. Taylor insisted that she didn't need any help. The last time he went back he grabbed the broom from her. ▐█▌ He stuck his hand in his pocket and told her to undress. He then pulled out an opened knife, brought the knife to her neck and told her to take off her clothes. She refused, so he unbuttoned her blouse and took off her shorts. She testified that during this time he held the knife at her neck telling her not to scream. He also said he would slit her throat. He pushed her down on the bed. She told him her husband had only gone shopping and he would be back any minute; that the front door was unlocked because her little boy was outside and he had better leave her alone; and that the other men who had left were only supposed to go to the corner store and would be right back. Defendant, not dissuaded, commenced an act of sexual intercourse. During this time he still had the knife in his hand. He told her she had better not scream and to stop crying. The doorbell rang while the act of intercourse was in progress. Mrs. Taylor told defendant the doorbell was ringing and he had better leave her alone. He didn't stop. Mrs. Taylor's son and one John Brown entered the house and proceeded to the bedroom. When they were in the hallway defendant jumped up and Mrs. Taylor who was still undressed ran into the closet. She testified that when defendant got up he still had the knife in his hand.

John Brown testified that when Mrs. Taylor's boy opened the door to the bedroom defendant was coming out ". . . fixing his pants up on him. Me not knowing who he were, never saw him before, I thought maybe he was one of her ex-fiancees. I did not know. So, he pushed the kid ahead of him and follows me and then at that time I sees Janet [sic] run into the closet and she didn't have any clothes on.'' Brown testified defendant put the boy on his lap and offered him fifty cents to go down to the store to get some candy. When asked if he noticed anything in either of Mr. Burroughs' hands Brown

stated: ''Yes. I couldn't exactly make out exactly what it were, I just seen a shiny object, and he had a coat laying over his arm, you know.'' He further testified when defendant got out on the porch he saw the object was a knife and it was open. Brown testified he could see that Mrs. Taylor had been crying; when he asked her what was the matter she wouldn't tell him; and when he and defendant walked out of the house to leave defendant offered him 10 dollars to get some liquor.

Justin Scott testified when he and Matthew Jones returned to the house Mrs. Taylor looked disturbed and worried and her eyes were red.

Mrs. Taylor testified she, the three men and Mrs. Taylor's daughter all got in a car together after the occurrence to go to her mother's house; defendant put her daughter on his lap and was sitting in the front seat next to Mrs. Taylor, with Mrs. Taylor sitting between the driver and him. Mrs. Taylor testified he still had the knife in his hand and defendant kept asking her to promise not to say anything. She stated she promised not to if he would leave her alone. Mrs. Taylor got out of the car in front of her mother's house. She telephoned her husband from there and told him what had happened. She also related the incident to her mother as soon as she went into the house.

Defendant's version of the facts were when he and Jeanette Taylor had been left alone in the house they commenced dancing and Mrs. Taylor told him she needed some money to get the children some things for Christmas; she and her husband had had a few words and he had gone. Defendant stated he told Mrs. Taylor he would give her the money ''for her time''; she agreed and went to the bedroom and undressed; defendant got into position but never completed the act of intercourse. He said he never had a knife the whole time he was there nor did he threaten her. He denied Mrs. Taylor cried at any time that afternoon nor was she sweeping while he was there; and further denied he offered Mr. Brown a 10-dollar bill for anything.

In rebuttal Mrs. Taylor testified she was not separated from her husband and did not need money for toys for her children; her husband had been employed for four years and she likewise was steadily employed; she had received a Christmas bonus and some other money in addition to her regular pay; and she had purchased toys for her children.

Defendant contends, in essence, the evidence is not sufficient to sustain the judgment; the facts present a situation of inher-

ent improbability and the record does not show certain proceedings which degraded his character.

The evidence is clearly sufficient to sustain the conviction. Defendant points out certain inconsistencies in the testimony of witnesses; however, these must be resolved by the trial court and not the appellate court. (*People* v. *Adkins,* 165 Cal.App.2d 29, 33-34 [331 P.2d 195].) Moreover, such alleged discrepancies come within the purview of article VI, section 4½ of the California Constitution, and do not represent grounds for reversal.

 The corpus delicti of the crime of rape consists of an act of sexual intercourse accomplished with a female not the wife of the perpetrator where the victim is prevented from resisting by the threat of great and immediate bodily harm accompanied by apparent power of execution. (*People* v. *Peterman,* 103 Cal.App.2d 322, 324 [229 P.2d 444]; *People* v. *Vaughn,* 70 Cal.App.2d 439, 445 [161 P.2d 293].)

 The testimony of the prosecutrix requires no corroboration in a rape case. (*People* v. *Soto,* 155 Cal.App.2d 344, 345 [317 P.2d 1005].) The fact that the prosecutrix is not the wife of defendant may be shown by testimony which evidences that the relationship did not exist, although a direct question on the issue was not asked. (*People* v. *Truesdell,* 124 Cal.App. 360, 364-365 [12 P.2d 476].)

The evidence clearly establishes Mrs. Taylor was living with her husband and her husband was not the defendant. There is no merit to defendant's contention that the evidence taken as a whole was inherently improbable. In order to hold that evidence is inherently improbable and unworthy of belief it must appear that the facts testified to are such as would amount to a physical impossibility and be unbelievable per se. (*People* v. *Newlan,* 173 Cal.App.2d 579, 582 [343 P.2d 618]; *People* v. *Adkins, supra,* 165 Cal.App.2d 29, 32.)

Finally, defendant contends that the transcript omits the rebuttal argument of the prosecutor which referred to his size and his intentions toward Mrs. Taylor and which allegedly degraded his character. If defendant desired any additional record under rule 33(b) it was incumbent upon him to file an application with his notice of appeal that it be included. (*People* v. *Denne,* 141 Cal.App.2d 499, 514 [297 P.2d 451].) It also must be remembered this case was before an experienced trial judge who was not likely to have been swayed by any impropriety in the arguments of the prosecutor, even assuming that there were such improprieties.

When defendant took the stand to testify in his own behalf he was asked concerning his prior felony convictions. This was entirely proper for purposes of impeachment when he was sworn as a witness. (Code Civ. Proc., § 2051; *People v. Sizelove*, 134 Cal.App.2d 104, 108 [285 P.2d 4].) He acknowledged that he had served time in the state prison for each of the two felonies. No further reference was made to these prior offenses in the examination.

The People suggest that defendant's notice of appeal does fall within the purview of the Rules on Appeal (rules 1(a) and 31(b)). Defendant used the words "will move for an appeal. . . ." While the People acknowledge that the words "intends to appeal" have been held sufficiently close to "desires and intends to appeal" to vest jurisdiction in the appellate court (*Mamer v. Superior Court*, 15 Cal.2d 569, 572 [103 P.2d 961]), the words "will move" merely express an intention to appeal and do not mean that defendant *presently* appeals from the judgment. We hold that the language used was sufficient and within the rules for liberal construction declared in the *Mamer* case, *supra*.

The record does not disclose a miscarriage of justice in this case. Judgment affirmed.

Jefferson, J., and Balthis, J., concurred.