[Crim. No. 8833. Second Dist., Div. Three. Dec. 16, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. MICHAEL NAZZARO, Defendant and Appellant.

Ellery E. Cuff, Public Defender, Lothair Schoenheit and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and H. Warren Siegel, Deputy Attorney General, for Plaintiff and Respondent.

FORD, J.—In a prosecution for the crime of robbery, the defendant was found guilty by a jury of robbery of the second degree. He has appealed from the judgment and has

attempted to appeal from the nonappealable order denying his motion for a new trial. A statement will be made of the evidence in the light of which his contentions must be considered.

Eva Dunlap testified that she worked as a clerk at the Monrovia Bakery. On June 19, 1962, the defendant entered the bakery about 2:30 p.m. He leaned over the counter and said, "Lady, I want money." He was holding a bag against the counter. Out of the bag he pulled the handle of a gun (which was later determined to be a toy pistol). The witness was placed in fear by the defendant's actions. She ran to the rear of the store and called the baker. When she turned around, the defendant was standing in back of her. While the defendant was talking to the baker, Mr. Romano, in the back room, she went to the telephone and asked the operator to get the police. Then the defendant came up to her and said, "Lady, if you don't give me the money, I will hurt you." Mr. Romano told her to give him the money. She handed him 35 cents which she had in her hand but he refused it. She further testified as follows: "I walked up to the cash register and rang up the 35 cents. He was right behind me and when I opened the cash register he started taking money out of the till and putting it in the bag." Shortly thereafter Mr. Romano hit the defendant on the head with a rolling pin.

On cross-examination, Mrs. Dunlap testified that she thought that the defendant had "a real gun." He had it in his hand and pointed it at Mr. Romano when Mr. Romano came around the end of a table. Upon the subject of whether the defendant took money from the cash register, the witness testified in part: "I didn't see how much he was taking. He was putting it in the bag. ... He took some paper bills. ... There was $3 in the bag when the police picked up the bag."

On redirect examination, Mrs. Dunlap testified that she saw the defendant's hand inside the cash drawer and that he was taking paper bills out of the drawer. She saw the paper bills in his hand. But she did not see him put the money into the bag.

Louis F. Romano, the baker, testified that the defendant placed the muzzle of the gun against his body. He was afraid when he first saw the gun. When Mr. Romano hit the defendant, "three $1 bills flew in the air."

The defendant testified in his own behalf. In answer to an inquiry by his own counsel, he testified that he had lived at a

hotel in Monrovia for about two weeks prior to June 19, 1962, and that he had been in prison before that two-week period and had been paroled. He said that he bought the cap pistol for some boys he saw playing in a restaurant where he sometimes ate. The purchase was made in a store located across the street from the bakery. When he went into the bakery, he had more than $27 on his person. His purpose was to buy doughnuts. He had been drinking earlier in the day, but he knew what he was doing. He asked the lady behind the counter ''for a couple dozen assorted'' doughnuts. When he was getting some change out of his pocket, the gun dropped on the floor. Then the lady became excited and ran to the back of the store. He followed her to quiet her, telling her, ''Lady, I don't want to rob you.'' He saw Mr. Romano in the rear portion of the premises. When Mrs. Dunlap started back toward the cash register, he followed her so that he could pay for the doughnuts and leave the store. That is when he was hit. He took no money and did not know how ''that $3 ever got in that envelope'' or paper bag. ''[I]t came falling out of the paper bag'' when he was hit on the head. He had had the paper bag in his right-hand pocket, the pocket in which he had his change.

On cross-examination, the defendant could not explain why the receipt for the gun was dated June 10, 1962. ■ During the course of that examination, over objection made on his behalf, the defendant was required to answer questions as to past behavior on his part. The questions and answers were as follows: ''Q. ... On many other occasions, you have gone into a place with a gun intending to take money, haven't you? . . . THE WITNESS: Well, I will tell you everything I done, sir, I pled guilty to it. I never tried to deny it, but this is an out and out hummer. I never done it. ... Q. Any gun. Have you ever gone into a place with a gun intending to rob the place? . . . THE WITNESS: Well, my real intent if I was going into a place to rob it, I would surely rob it in the right way. ... Q. How many times have you done that? ... THE WITNESS: Am I being tried for something that happened years ago or being tried for this here now? [1] ... Q.

---

[1]At this point, the record shows the following: ''Q. [by the deputy district attorney] : You have stuckup dozens of places? A. No, I haven't stuckup dozens of places.'' A motion for a mistrial was then made and denied, but the objection to the question was sustained. The words uttered by the deputy district attorney, ''You have stuckup dozens of places,'' were stricken.

You tell us how many times. . . . THE WITNESS: Are you trying to convict me on my past, not on what I done? Ain't that what you trying to do, Mr. District Attorney? . . . THE WITNESS: It is bad enough. I done all my time on my back charges. Why don't you stand pat on what you have got me charged for? Why bring up the past? I have done time on the past. Why don't you give me a break? You want to put me in prison for the rest of my life for something that I have never done. [The Deputy District Attorney]: Might that answer be stricken, your Honor, as not responsive to the question? THE COURT: It may be stricken. . . . Q. Have you gone into a building more than once with a gun intending to rob the place? A. Oh, no.'' The defendant was then asked whether he had suffered a number of prior felony convictions, including two convictions of robbery, one of grand theft and two of burglary. He answered that he had been so convicted.

The defendant contends that he was denied a fair trial because of the nature of the cross-examination as to other robberies. The deputy district attorney's position was that his inquiry was relevant with respect to the issue of the intent of the defendant at the time of the incident in the bakery. (See *People* v. *Bennett*, 135 Cal.App.2d 649, 652 [287 P.2d 866]; Note 42 A.L.R.2d 854, 858.) But it is to be noted that there is nothing in the record to support a conclusion that the prosecutor was attempting in good faith to show that the defendant had committed prior robberies in a manner similar to that to which Mrs. Dunlap and Mr. Romano had testified. The inquiry was general in nature and was as to whether the defendant had had the requisite intent in prior occurrences, regardless of whether they were factually similar to the occurrence involved in the charge for which he was on trial. In the absence of similarity of circumstances, the cross-examination fell within the rule against proving another crime when such proof serves no purpose other than to show the disposition of the defendant to commit crimes. (See *People* v. *Coefield*, 37 Cal.2d 865, 869-870 [236 P.2d 570]; *People* v. *Peete*, 28 Cal.2d 306, 314-318 [169 P.2d 924]; *People* v. *Lapin*, 138 Cal.App.2d 251, 259 [291 P.2d 575]; McBaine, California Evidence Manual (2d ed. 1960) § 614.)[2]

---

[2]The governing law is aptly set forth by McBaine in the section cited. He states in part: ''Intent of the defendant, a state of mind which negatives accident, inadvertence, or innocence, is relevant in a criminal prosecution. Evidence of intent to commit the crime charged is admissi-

380

In *People* v. *Albertson*, 23 Cal.2d 550, at page 577 [145 P.2d 7], the Supreme Court stated: "The trial court, however, should be guided by the rule that such proof [of other crimes] is to be received with 'extreme caution,' and if its connection with the crime charged is not clearly perceived, the doubt is to be resolved in favor of the accused, instead of suffering the minds of the jurors to be prejudiced by an independent fact, carrying with it no proper evidence of the particular guilt." (See McCormick, Law of Evidence (1954) § 157, pp. 332-333.)

■ While the failure of the trial court and the deputy district attorney to adhere to the applicable rule of evidence cannot be approved, the fact that error was committed does not necessarily entitle the defendant to a new trial. The test to be applied in determining the existence of prejudicial error has been stated by the Supreme Court as follows: "That a 'miscarriage of justice' should be declared only when the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." *(People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243].) ■ In the present case the defendant was asked on cross-examination, by way of impeachment, if he had suffered prior felony convictions, the specific offenses being named. He stated that he had. Two of the convictions were for robbery, one conviction having occurred in 1945 and the other in 1958. The jury was instructed as to the limited purpose for which the evidence of such convictions could be considered.[3] An examination of the

ble although in proving it the commission of another crime by the accused is revealed.

"In order for evidence of other acts to become admissible to show defendant's intent in doing the act charged similarity of circumstances must be shown. Admissibility is based upon the rule of chances. If a similar previous act was not done innocently it is logical to conclude that the act charged was not done innocently. If no similarity of circumstances exists there is no basis for reasoning that the act in question was not innocently done. Intent is a relevant fact and it is not proved by evidence of the commission of another crime, even the same kind of crime, where there is no evidence of similarity of circumstances. The rule against proving another crime to show disposition to commit crime will be violated if evidence of similarity of circumstances is not required."

[3]The instruction given was as follows: "The fact that a witness had been convicted of a felony, if such be a fact, may be considered by you for only one purpose, namely, in judging the credibility of that witness.

record in this case leads to the conclusion that it cannot be said that there was a miscarriage of justice since it is not reasonably probable that a result more favorable to the defendant would have been reached in the absence of the error.

The second contention of the defendant is that there was prejudicial error in that the jury was not adequately instructed upon the subject of the asportation required for the commission of the offense of robbery (see *People* v. *Wellman*, 141 Cal.App.2d 101, 104 [196 P.2d 82]) and upon the issue of whether or not the defendant was guilty of an attempt to commit robbery rather than of robbery. As will be shown, there is no merit in the contention.

The jury was instructed that one of the elements necessary for robbery is ''a carrying away of the property.'' The instruction contained the following explanation of that element: ''. . . in order to constitute a carrying away, the property need not be retained in the possession of the thief; neither need it be removed from the premises of the owner. Any removal of the article from the place where it was kept by the owner, done with the intent I have described, and whereby the thief obtains possession and control of the property at least for a fraction of time is sufficient to constitute the element of carrying away.'' The instruction constituted an adequate statement for the jury of the nature of the requisite asportation. (See *People* v. *Quiel*, 68 Cal.App.2d 674, 678-679 [157 P.2d 446].)

The instruction to which reference has just been made contained a second paragraph which informed the jury as to the relationship between the element of asportation and the crime of an attempt to commit robbery.[4] That paragraph was

---

The fact of such a conviction does not necessarily destroy or impair the witness's credibility, and it does not raise a presumption that the witness has testified falsely. It is simply one of the circumstances that you are to take into consideration in weighing the testimony of such a witness.''

[4]Prior to the giving of that instruction, the jury was instructed as follows: ''An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission.

''In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt; but acts of a person who intends to commit a crime will constitute an attempt where they themselves clearly indicate a

as follows: "An attempt to commit a robbery does not become a robbery until there has been an asportation of some property from the person or immediate presence of another While some asportation is required to constitute robbery, distance that property is taken may be small."

The defendant asserts that the instructions were prejudicially misleading in that the jury was instructed as follows: "The evidence in this case is such that, as a matter of law, it presents no question as to the degree of the crime charged, and I instruct you that you must find the defendant either not guilty of the offense charged against him, or guilty of robbery in the second degree." But the defendant's point is not tenable. The criticized instruction was given immediately after the court had defined the crime of robbery and the degrees thereof. It obviously had reference to the crime of robbery only. It is not probable that it misled the jury because shortly thereafter the court gave an instruction that the offense of robbery, "necessarily include[s] the crime of attempted robbery," and that the jury could find the defendant guilty "of an attempt to commit the offense" with which he was charged, if, in the judgment of the jury, the evidence supported such a verdict under the instructions of the court.

The testimony of Mrs. Dunlap was sufficient to sustain a determination by the jury that the defendant removed money from the cash register and had possession and control of it for an appreciable period of time, so that the element of asportation existed. The instructions were not prejudicially erroneous. The contentions of the defendant cannot be sustained.

The appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Shinn, P. J., and Files, J., concurred.

certain, unambiguous intent to commit that specific crime, and, in themselves, are an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design."