Filed 1/21/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | G057291 |
|       v. | (Super. Ct. No. 17NF3567) |
| WESLEY JOHN ROBINS, | O P I N I O N |
|     Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Nancy E. Zeltzer, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Kenneth C. Byrne and Gregory B. Wagner, Deputy Attorneys General, for Plaintiff and Respondent.

\*       \*       \*

Defendant Wesley John Robins was alleged to have aided and abetted in what started out as a shoplifting, but turned into an *Estes* robbery,[1] followed by recklessly evading authorities. He was convicted of *attempted* second-degree robbery (Pen. Code, §§ 664, subd. (a), 211, 212.5, subd (c); count 1)[2] and felony reckless evading (Veh. Code, § 2800.2; count 2). Defendant admitted a prior strike (§§ 667, subds. (d) & (e), 1170.12, subds. (b) & (c)(1)), a prior prison term (§ 667.5, subd. (b)), and a prior serious felony (§ 667, subd. (a)(1)). The court sentenced defendant to 32 months in prison on count 1, which was double the low term because of the prior strike. It sentenced defendant to a concurrent 32 months in prison on count 2, which was also double the low term. The court imposed but immediately struck a five-year enhancement for the prior serious felony and a one-year enhancement for the prior prison term. The result was a total prison sentence of 32 months.

Defendant raises three issues on appeal.

First, defendant contends he cannot be convicted of an attempted *Estes* robbery because there is no such crime. The gist of defendant's argument is that the concept of an attempted *Estes* robbery is incoherent. When someone takes clothes from a retail store and uses force to get away, it does not matter if a store employee successfully retrieves the property. The instant force is used, the *Estes* robbery is complete. There is no possibility of a mere attempt, according to defendant. While this is a clever argument, we ultimately reject it for reasons we explain below.

Second, and third, both the attempted robbery conviction and the reckless evading conviction were on the theory that these were natural and probable consequences of aiding and abetting the theft. Defendant was neither the thief, nor the getaway driver.

---

[1] *People v. Estes* (1983) 147 Cal.App.3d 23.

[2] All statutory references are to the Penal Code unless otherwise stated.

2

Defendant contends there was insufficient evidence to support the theory in either case. We disagree and affirm the convictions.

## FACTS

On a December evening in 2017, a few days before Christmas, a loss prevention officer (LPO) for a department store in the Brea Mall observed codefendant Kristin Linn Benson behaving suspiciously.[3] Namely, Benson was haphazardly accumulating a large quantity of clothing, apparently without regard to size or price. Benson began working her way toward the exit, talking on a cell phone, and continuing to collect merchandise in the same manner.

The LPO exited the store ahead of Benson and noticed a van parked near the entrance, with an Arizona license plate, flashing its emergency lights. The LPO saw the driver was on his cell phone and took a photo of the van's license plate. The LPO continued watching Benson inside the store through the glass doors. The LPO saw Benson exit the store, arms full of merchandise, without paying.

The LPO confronted Benson outside the store, identified herself verbally and by presenting her loss prevention badge. Benson became aggressive and swung the pile of merchandise at the LPO, pushing her back a few steps. The LPO commanded Benson to let go of the merchandise, but Benson did not comply, so the LPO pushed down on the clothing, causing most of it to slip out of Benson's grasp and onto the ground. The LPO then forcibly opened Benson's arms to cause the remaining merchandise to fall.

Benson then pushed the LPO and made a break for the van. The LPO grabbed Benson by her arm and jacket in an attempt to apprehend her, prompting Benson

---

[3] Defendant was tried with two codefendants. Only defendant Wesley John Robins is a party to this appeal.

3

to scream and yell at the LPO. About the time the LPO managed to detain Benson on the ground, two men emerged from the van with hands clenched into fists, assuming a fighting stance (the men were defendant and codefendant Brandyn Michael Scotto). One of the men told the LPO to let Benson go. Fearful of a physical confrontation, the LPO complied. The same man yelled, "Let's go," and the three climbed into the van and drove away. The LPO immediately called the police, then collected the merchandise on the ground. The value of the merchandise totaled about $765.

A Brea Police officer was on patrol near the Brea Mall at the time. After details of the robbery were broadcasted, he noticed a van fitting the description of the getaway vehicle. He activated his police lights and siren to initiate a traffic stop, but the van accelerated away. It then turned into a shopping center where it raced through the parking lot at speeds between 30 and 45 miles per hour, eventually making its way behind a retail store. The officer pursued the van, which then turned down an alleyway back toward the front of the store. The exit from the alleyway was blocked by a car, so the van turned into a brick wall, damaging the wall enough for the van to break through and onto a sidewalk. It drove for approximately 30 feet on the sidewalk, then back onto the parking lot, at speeds of 30 to 35 miles per hour. There were pedestrians in the area, and at least one pedestrian suffered a minor injury after attempting to jump out of the van's way.

The van eventually lost control, slammed into parked cars, and came to a halt. The driver, codefendant Scotto, jumped out of the van and made a run for it, but was quickly apprehended. Codefendant Benson was found in the front passenger seat, and defendant was in the rear cargo area. The cargo area had no seats or seatbelts.

The trial proceeded on the charge of *attempted* robbery, even though the evidence suggested a completed robbery, because defendant had only been held to

4

answer at the preliminary hearing on the charge of attempt.[4]  The LPO did not testify at the preliminary hearing.  At its conclusion, the evidence showed that Benson had abandoned some of the merchandise prior to any physical confrontation with the LPO, which, in the magistrate's view, demonstrated only attempted robbery.  Accordingly, even though the complaint had charged robbery, the court held defendant to answer on a charge of *attempted* robbery.

DISCUSSION

Defendant raises three issues on appeal.  He contends there is no such thing as an attempted *Estes* robbery, and thus his conviction on count 1 must be reversed.  He also contends there was no substantial evidence to support the jury's conclusion that he aided and abetted either the attempted robbery or the reckless evasion afterward.  We disagree on all three fronts.

*Attempted* Estes *Robbery*

Defendant first contends that the concept of an attempted *Estes* robbery is incoherent and cannot logically exist.  And because the crime does not exist, the argument goes, defendant cannot be convicted of it.  (See *People v. Bean* (1989) 213 Cal.App.3d 639, 642 [finding a defendant cannot plead guilty to the nonexistent crime "attempted petty theft with a prior conviction," and stating, "Defendant's claim is refreshingly simple: '[Defendant] was convicted of a non-crime.'  This claim has merit"]; see also *Adams v. Murphy* (5th Cir. 1981) 653 F.2d 224, 225 ["Nowhere in this country

---

[4]  The People initially filed a charge of robbery in the information.  This prompted a section 995 motion to dismiss by defendant.  At the hearing, of which we do not have the transcript, the People voluntarily moved to amend the information to charge attempted robbery instead of robbery.

can any man be condemned for a nonexistent crime"].)  To understand defendant's argument, we begin with the basic principles of robbery.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)  It includes two phases:  acquiring the property, and carrying it away (in the parlance of legalese:  caption and asportation).  (*People v. Gomez* (2008) 43 Cal.4th 249, 255; *People v. Lopez* (2003) 31 Cal.4th 1051, 1058-1059.)  What sets robbery apart from simple theft is the use of force or fear and taking from the victim's immediate presence.  "Theft by larceny may be committed without force or the threat of violence and may be completed without the victim ever being present." (*Gomez*, at p. 254.)  In the prototypical case, a person commits robbery by assaulting a person and then stealing the person's property.  The force or fear is used to acquire the property.

What sets an *Estes* robbery apart from a standard robbery is that force or fear is used not in the acquisition of the property, but in the escape.[5]  (*People v. Estes, supra,* 147 Cal.App.3d at p. 28.)  The typical case starts with a shoplifting and turns into a robbery when the thief is confronted by a LPO, and the thief assaults the LPO in an attempt to get away.

A key premise of defendant's argument is that, to constitute robbery, the robber need only possess the property briefly—as one court phrased it, "but a moment." (*People v. Pruitt* (1969) 269 Cal.App.2d 501, 506; see *People v. Pham* (1993) 15 Cal.App.4th 61, 67 ["however temporarily"].)  As another court explained, "'[I]n order to constitute a carrying away, the property need not . . . be removed from the premises of the owner.  Any removal of the article from the place where it was kept by the owner, . . . whereby the thief obtains possession and control of the property at least for a fraction of

---

[5]  In the parlance of legalese:  not in the caption phase, but in the asportation.

time is sufficient to constitute the element of carrying away.'" (*People v. Nazzaro* (1963) 223 Cal.App.2d 375, 381.)

We now have all of the building blocks for defendant's argument. The chronology of an *Estes* robbery is that the thief will necessarily have possessed the property, however temporarily, *before* using force. If the thief uses force while in possession of the property, the *Estes* robbery is complete the moment force or fear is used: there has been a taking coupled with force. This is true even if the thief is ultimately unsuccessful in escaping with the goods. If, on the other hand, the thief abandons the property or the property is confiscated before using force, then there is no robbery at all. That is simply a theft plus an assault. As a result, defendant concludes, there is no such thing as an attempted *Estes* robbery.

As it happens, there is at least one case that lends support to defendant's argument. In *People v. Pham, supra,* 15 Cal.App.4th 61, the victims caught the defendant in the act of taking items from their car; the defendant fled, and the victims gave chase. About the time the victims caught up, the defendant threw the stolen goods on the ground and attempted to fight off the victims. The victims ultimately subdued the thief. (*Id.* at p. 64.) On appeal, the defendant argued the court erred in failing to instruct the jury on the lesser included offense of attempted robbery. (*Id.* at p. 67.) The Court of Appeal disagreed, reasoning that if the defendant abandoned the property, there would be no robbery at all (attempted or otherwise), but that if he did not abandon the property then it could only be a completed robbery, not an attempt: "If the prosecution's evidence was believed, it would not support an offense less than robbery. Defendant's conduct was either a robbery committed by the use of 'force or fear in resisting attempts to regain the property or in attempting to remove the property from the owner's immediate presence . . .' [citation], or it was simply an assault or a battery. If defendant truly abandoned the victims' property before using force, then, of course he could be guilty of theft, but not of an *Estes*-type robbery. Indeed, in the situation where property is taken

7

without the use of force or the threat thereof and thereafter such force or threat is employed to prevent the owner from recovering the property or to facilitate an escape, the offense committed simply could not be an attempted robbery. Thus, defendant was not entitled to an instruction on attempted robbery since such a theory was contrary to the evidence." (*Id.* at p. 68.)

The key to unraveling this apparent riddle is a simple concept: that of a *successful attempt*. There is nothing logically incoherent about the idea of a successful attempt. Indeed, in California this concept is established by statute. Section 663 provides, "Any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted *was perpetrated* by such person in pursuance of such attempt . . . ." (Italics added.) As our high court explained, "Under section 663, a defendant can be convicted of an attempt to commit a crime even though the crime, in fact, was completed." (*People v. Rundle* (2008) 43 Cal.4th 76, 138 fn. 28, disapproved on other grounds by *People v. Doolin* (2009) 45 Cal.4th 390, 421 fn. 22).

Defendant responds that section 663 can only apply to attempt crimes that actually exist. Defendant contends that an attempted *Estes* robbery is akin to attempt crimes that our courts have found not to exist, such as attempted assault (*In re James M.* (1973) 9 Cal.3d 517, 522), attempted involuntary manslaughter (*People v. Johnson* (1996) 51 Cal.App.4th 1329, 1332), and attempted reckless causing of a fire (*In re Kent W.* (1986) 181 Cal.App.3d 721, 724).

Those crimes, however, entail true logical contradictions. An assault is already defined in terms of an attempt: "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) In finding attempted assault not to exist, our high court reasoned, "Juries should not be required to engage in fruitless metaphysical speculation as to differing degrees of proximity between an assault and a general attempt, nor as to the logical possibility of attempting to commit any crime of assault, either simple or aggravated, the basic nature

8

of which is an attempt in itself."[6] (*In re James M., supra,* 9 Cal.3d at p. 522.) The logical conundrums grow even worse with the concepts of attempted involuntary manslaughter and attempted reckless causing of a fire. A thing attempted must be intended. Yet involuntary manslaughter by its nature is unintended. "If there were such a crime, it would necessarily be based on the internally contradictory premise that one can intend to commit an unintentional killing." (*People v. Johnson, supra,* 51 Cal.App.4th at p. 1332.) The same is true of an attempted reckless causing of a fire: "To have that intent, he must (1) intend to cause a fire and (2) intend to unintentionally cause burning of property. . . . [I]t is a logical impossibility to intend an unintentional result. We conclude there can be no attempt to commit a violation of section 452." (*In re Kent W., supra,* 181 Cal.App.3d at pp. 723-724.)

No such logical contradiction is entailed in the concept of an attempted *Estes* robbery. Defendant's only argument on that front is that an attempt is incoherent because an attempt is necessarily a completed robbery. But we have already shown that a *successful attempt* is a rational concept that is well established in the Penal Code. Thus, even if every attempted *Estes* robbery is necessarily a completed crime, the crime of attempt still exists and may be punished under section 663. Generally, attempted robbery is a lesser included offense of robbery. (*People v. Webster* (1991) 54 Cal.3d 411, 443 ["The jury received instructions correctly defining robbery *and* the lesser included offense[] of attempted robbery"].) Defendant's argument seeks to parse the crime of robbery in such a way as to eliminate the lesser included offense in the *Estes* situation. We are not aware of any authority that would allow such a result, and we are loath to

---

[6] The court also found that the absence of a statute defining attempted assault as a crime was indicative of Legislative intent not to punish attempted assault (e.g., an attempt to commit violence without the present ability to do so). (*In re James M., supra,* 9 Cal.3d at p. 522.)

9

adopt a rule that would allow a defendant to go unpunished because he committed the greater offense and not the lesser.

So, what do we make of the comments in *Pham*?  The *Pham* court was correct as far as it goes.  The only issue in *Pham* was whether the defendant was entitled to a jury instruction on the lesser crime of attempted *Estes* robbery.  (*People v. Pham*, *supra*, 15 Cal.App.4th at p. 67.)  But if every attempt is a completed robbery, then there were no set of facts in which defendant could be liable for attempted robbery and not a completed robbery.  Thus, if the jury were to find the defendant guilty, it could return but one verdict:  conviction for the greater offense of robbery.[7]  The evidence did not support giving an instruction on the lesser offense.  Here, the issue is not whether defendant was entitled to an instruction on attempt.  He was, after all, charged with attempted robbery, not robbery.  And we have concluded that commission of the completed robbery does not preclude conviction of the attempted robbery with which he was charged.

*Natural and Probable Consequences*

Next, defendant contends that the evidence does not support the conviction for aiding and abetting an attempted robbery.  The People proceeded on the theory that a natural and probable consequence of aiding and abetting in the theft was that an *Estes* robbery would be attempted.  We conclude substantial evidence supports that theory.

_____

[7]  We do not necessarily agree with defendant's premise that every attempted *Estes* robbery is a completed *Estes* robbery.  Consider the following hypothetical: suppose a defendant takes property off a store rack and places it into a bag with the intent to steal it, but, unnoticed by the defendant, the property falls out of the bag.  If he then exits the store, is confronted by an LPO who also does not notice the merchandise had fallen out, and a scuffle ensues, arguably that would be an attempted *Estes* robbery but not a completed *Estes* robbery because the defendant did not have possession of the property at the time force was used.  (See *People v. Peppars* (1983) 140 Cal.App.3d 677, 688 ["factual impossibility is not a defense to a charge of attempt"].)  This scenario is somewhat outlandish, but we simply make the point that it is not necessarily true that every attempted *Estes* robbery is a completed *Estes* robbery.

10

"[A]n aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted.'" (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) "'The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. [Citations.] Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.'" (*People v. Medina* (2009) 46 Cal.4th 913, 920.) "'[T]o be reasonably foreseeable "[t]he consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. . . ." [Citation.] [Citation.] A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case [citation] and is a factual issue to be resolved by the jury." (*Ibid.*) We review a jury's finding for substantial evidence. (*People v. Chavez* (2018) 22 Cal.App.5th 663, 685.)

Here, the evidence supports the conclusion that defendant intentionally aided and abetted theft when he exited the van to aid Benson in escaping from the LPO. Arguably, that same evidence would support a conclusion that he intentionally aided and abetted *robbery*, but the People did not present that theory to the jury. We will restrict our analysis, therefore, to whether the robbery was a natural and probable consequence of the theft.

We conclude the evidence supports the verdict. Defendant was in a getaway van, in front of a department store, three days before Christmas, and Benson went in to steal a substantial amount of merchandise. Given the amount at stake, the

11

prospect of a ready getaway, and the consequences of apprehension, it was reasonably likely that Benson would use force or fear if necessary to get to the van. Defendant contends there is no evidence in the record that Benson was prone to violence or had committed robberies in the past. Although such evidence would have aided the prosecution, it was not necessary; its absence furnished a viable jury argument, not a winning appellate argument.

Defendant raises a similar argument regarding count 2, reckless evading. He contends there was no substantial evidence to support his conviction on a theory of natural and probable consequences. Once again, we disagree. Defendant was waiting *in a getaway vehicle*, which was parked right in front of the store. Making a quick escape in the van was an essential part of the plan. Under these circumstances, a jury could conclude that the probability of an ensuing chase was sufficiently high to make it reasonably foreseeable.

DISPOSITION

The judgment is affirmed.

IKOLA, J.

WE CONCUR:

O'LEARY, P. J.

MOORE, J.

12