[Crim. No. 9631.    Second Dist., Div. Two.    Apr. 27, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES THOMAS NORTH, Defendant and Appellant.

Richard R. Clements, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and David S. Sperber, Deputy Attorney General, for Plaintiff and Respondent.

HERNDON, J.—Having been convicted by a jury of the crime of issuing checks without sufficient funds in violation of section 476a of the Penal Code, defendant has appealed from the judgment. Several contentions are made on this appeal, but since the judgment must be reversed by reason of the application of law enunciated in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 316], no useful purpose would be served by discussing any other assignments of error. They involve problems which are not likely to be presented on any subsequent appeal, should one be taken.

Officer McEwen of the Forgery Detail of the Pasadena Police Department testified concerning a statement made

to him by appellant ''in the Detective Division of one of the offices at the Pasadena Police Department.'' Appellant was then under arrest. The officer testified as follows: ''In reference to two other checks, one given to Wayne Motors for a Buick, the check was for $100.00, and another check for $400.00, which was given to Mr. Saulnier for a '56 Mercury; the checks were of the same nature as the two given the furniture dealers. And I asked him how he expected these checks would become good. And he said he expected to make them good with the proceeds from the job which he had at Foothill Heating. But that he knew, in other words, at the time that he gave the checks, there wasn't money there, but he intended to obtain the money from his job and make those checks good.'' ▆ In *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354, the following declaration of the law was made:

''We conclude, then, that defendant's confession could not properly be introduced into evidence because (1) the investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights.''

▆ It is true that appellant's statement received in evidence herein does not technically amount to a full confession, since possibly it could be construed to mean that he felt he had possessed good reason to believe, and did honestly believe, that the checks would, in fact, be paid upon presentation, and, therefore, that he had not entertained the requisite intent to defraud. However, in the factual context of the present case, it was tantamount to a confession, and, even if construed only as an admission, it would still be sufficiently prejudicial that we could not fairly say ''that it constituted merely harmless error.'' (*People* v. *Dorado, supra,* 62 Cal.2d 338, 356.)

Appellant's pathetic attempt to represent himself herein makes it extremely difficult to determine the exact legal theory upon which he sought to base his defense. All the checks involved were drawn against an account which was carried in the name of his sister. It appears, however, that as to the checks which he personally signed, he believed he had been authorized by his sister so to sign, and that as to the larger checks referred to by the officer, which were signed by his

sister, he believed that she had sufficient funds on deposit to cover them upon presentation. The reasonableness of these beliefs was to some extent supported by his sister who, as a prosecution witness, testified that she had told him that he ''could use'' her account and that she never had told him the amount she had on deposit therein.

From this it appears clear that it was never appellant's theory of defense that, although he knew there were insufficient funds on deposit in his sister's account to cover the checks at the time they were issued, he personally intended to make additional deposits prior to their presentation. Rather he was contending that he at all times believed that they would be honored because of his supposition that the funds in his sister's account were sufficient, although he was aware that he had not at that time given her sufficient money of his own to deposit in their ''joint'' account.[1]

Under these circumstances, the effect of the officer's testimony that appellant had told him ''that he knew, in other words, at the time that he gave the checks, there wasn't money there'' was completely to negate appellant's defense; in the premises it was sufficient to sustain a conviction. (Cf. *People* v. *Rubin*, 223 Cal.App.2d 825, 828-829, 834-835 [36 Cal.Rptr. 167]; *People* v. *Pitts*, 196 Cal.App.2d 841, 843 [16 Cal.Rptr. 879].)

▮ Of course, it is possible that despite the fact appellant was under arrest and in custody at the time his incriminating statements were made, nevertheless the interrogation conducted by the police still might not have involved a ''process of interrogations that lends itself to eliciting incriminating statements.'' (*Escobedo* v. *Illinois*, 378 U.S. 478, 490-491 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Stewart*, 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97].) However, since this case was tried prior to the announcement of these decisions, the record, quite naturally, is very terse and indefinite with respect to such aspects of the case which now have become vital in the application of these new rules. It may reasonably be assumed that these uncertain elements will be more adequately developed and clarified both by the prosecution and by the defense in the course of any further proceedings to be had in this cause. That such clarification should be required before the *Dorado* rule is held inapplicable

---

[1] His sister had testified that he had given her well over $100 from time to time from his earnings.

is made clear by the language of *People* v. *Stewart, supra,* page 578, wherein it is stated:

"We turn to the further requirement of *Escobedo* that, beyond the 'focus' and custody, the accusatory stage matures upon the undertaking by the police of a 'process of interrogations that lends itself to eliciting incriminating statements.' [Citations.] Although in *most cases* the process of interrogations following an arrest *will so lend itself,* it does not necessarily do so." (Italics added.)

Since in "most cases" the interrogation will so lend itself, in the absence of any contrary showing thereon in the record we cannot presume that this is one of the "rare" or "unusual" cases in which it did not so lend itself. ██ The conclusion is made clearer when the test suggested by the court in *People* v. *Stewart, supra,* 62 Cal.2d 571, 579, is considered: "The test which we have described does not propose a determination of the actual intent or subjective purpose of the police in undertaking the interrogations *but a determination based upon the objective evidence.* Whatever may be the subjective intent of the interrogators, we must, in order to determine if the police are carrying out 'a process of interrogations that lends itself to eliciting incriminating statements' [citation], *analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.*" (Italics added.)

Manifestly, the "total situation" cannot be "analyzed," and a "determination based upon objective evidence" cannot be made, by an appellate court when confronted with a record that is totally devoid of "objective evidence" relating to any of the "factors" required by the *Stewart* test.

The judgment is reversed.

Roth, P. J., and Fleming, J., concurred.

A petition for a rehearing was denied May 20, 1965, and respondent's petition for a hearing by the Supreme Court was denied June 23, 1965. Mosk, J., was of the opinion that the petition should be granted.