[Crim. No. 10529.    Second Dist., Div. Four.    Dec. 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK DIAZ, JR., Defendant and Appellant.

Richard Sinsheimer, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In a trial by the court, after waiving a jury, defendant was found guilty of violation of section 11530 of the Health and Safety Code (possession of marijuana). Defendant's motion for a new trial was denied. Proceedings were adjourned, and the sheriff was ordered to file a petition pursuant to section 6451 of the Penal Code for the purpose of determining whether defendant was addicted to narcotics or was in danger of being so addicted. Pursuant to Penal Code section 1237, subdivision 2, defendant appeals from the order denying his motion for a new trial.[1]

Two issues are raised by defendant, (1) whether the evidence which convicted him was secured through an illegal search and seizure and, (2) whether statements made by him after his arrest were elicited from him by the police in violation of the rule concerning warning of constitutional rights.

On the issue of probable cause, Officer Madama testified that, on June 10, 1964, he received a phone call from a man who identified himself and stated that he was the manager of a certain gas station located on Huntington Drive in Los Angeles. The man told the officer that four male Mexicans had entered his filling station at approximately 4 o'clock that day. They parked their car and went into the rest room. They stayed in the rest room for about half an hour. When they left he noted that the license number of their car, a green 1954 Buick, was GZW 933. He then went to the rest room to clean it, and found a trail of blood "all over the floor." On the floor he also found an empty balloon. These same men had used his rest room on past occasions and the "same routine had transpired." From this information, Madama, an experienced narcotics officer, formed the opinion that these persons were "fixing" (using heroin).

The officer further testified that, on the following day, he and his partner, Officer Wilson, drove to the gas station in question. When they arrived at 4 p.m. they observed a green Buick, bearing license number GZW 933, pull out of the station. There were four or five persons inside the car and all appeared to be of Mexican extraction. Madama recognized

---

[1] Under Penal Code section 1237 subdivision 2, an appeal lies "From an order denying a motion for a new trial, in cases where the defendant is committed before final judgment for. . . narcotic addiction."

the driver of the car as a man he had arrested in the past for possession of heroin. The officer stopped the Buick at Maycrest Avenue and Huntington Drive with the purpose of questioning its occupants. As they approached the car Officer Madama observed that the person sitting on the passenger side of the front seat "placed his right hand up to his mouth and withdrew it in a hurried manner." There were two persons in the front seat and three in the back seat. Defendant was seated in the center of the back seat. The five men were ordered to get out of the car and were placed under arrest. The car was then searched and a piece of crumpled paper was found lying in the center of the front seat. Inside the paper was a cigarette. (It was stipulated at the trial that a forensic chemist found that the cigarette contained marijuana.)

Well established is the rule that circumstances short of probable cause may nevertheless justify an officer in stopping motorists on the streets for questioning, and that, should the investigation then uncover reasonable cause to arrest a suspect, the officer may do so and conduct a reasonable incidental search. (*People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658].) Here the officers had received information that certain persons were engaged in activities which were highly suspicious and which suggested that narcotics violations were taking place. Although the reliability of the source of this information was not then established, and consequently, such information standing alone would not provide reasonable cause for a warrantless arrest or search, sufficient evidence was presented to justify the conclusion that the officer's reliance upon the information, as a basis for further investigation and interrogation, was reasonable. (See *Willson* v. *Superior Court,* 46 Cal.2d 291, 294-295 [294 P.2d 36].) When the officers arrived at the service station at 4 p.m. on the day following the incident described to them, they saw a car leave the premises matching the description given; it contained approximately the same number of persons; its driver was a person who had been arrested in the past for possession of heroin. Under these circumstances, the officers quite properly followed and stopped the car. When, as they approached the vehicle, one of the officers observed the furtive movement of one of its passengers in seemingly attempting to dispose of contraband, the officers had reasonable cause to make the arrests and to con-

duct the incidental search thereafter undertaken which produced the marijuana.

The facts pertinent to the second issue follow: At the time defendant was arrested he was interrogated—along with the other persons who were in the car—by Officers Madama and Wilson. The officers then took defendant and the other suspects to the Highland Park Police Station where they were further questioned. After a short time they were transported to the Narcotic Division of the Los Angeles Police Administration Building. Defendant was taken to an interrogation room and Officer Madama and another officer had a "conversation" with him. After asking that the other suspects be released, defendant stated that the marijuana cigarette found in the car belonged to him; that he threw it in the front seat as the officers approached.

Defendant testified at the trial and denied that the cigarette found in the car belonged to him. He told the officers it was his cigarette at the suggestion of the men arrested with him whom he had known for approximately five years. During the period of time after they were arrested and before they reached the police administration building, they had pleaded with him to say it was his cigarette, because he was younger and would probably get probation, while they had previous offenses and were likely to be dealt with severely. Defendant admitted that he knew what a marijuana cigarette was and that he saw a marijuana cigarette lying on the floor of the car before they were stopped.

Defendant's statement to the police constituted a full confession of guilt, was made at a time when he was in custody, and with suspicion focused on him. In addition, although the record does not indicate what questions were asked of defendant prior to his confession, it does show that he was "interrogated" at the scene of his arrest; that he was questioned further at the Highland Park Station; that he was then taken alone to an interrogation room of the police administration building narcotic division, where, during a "conversation" with two officers, he made the statement above referred to. Under such circumstances and since the record clearly fails to show that the statement was not the result of a process of interrogation tending to elicit incriminating statements we must presume that the statement was the product of such a process of interrogation. (*People* v. *Stockman*, 63 Cal.2d 494, 499 [47 Cal.Rptr. 384, 407 P.2d

296] [decided Nov. 10, 1965]; *People* v. *Luker,* 63 Cal.2d 464, 473-474 [47 Cal.Rptr. 209, 407 P.2d 9]; *People* v. *North,* 233 Cal.App.2d 884, 888 [44 Cal.Rptr. 123].) After discussing factors to be considered in determining whether a statement is the product of a process of interrogation (as set out in *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]), the court in *People* v. *Stockman, supra,* said (at p. 499), ''The prosecution and the police are better able than the defendant to preserve evidence as to these factors for use at trial. Here no substantial evidence concerning such factors was presented. Therefore, it must be held that the prosecution did not sustain its burden.'' At oral argument, although conceding that a ''process of interrogation'' had begun at the time of defendant's arrest and had continued through his detention at the Highland Park Police Station, the Attorney General argued that the ''process'' had stopped, and that the confession of guilt above discussed was a spontaneous and volunteered statement made before a new ''process'' had begun. The record however, does not support such assertion.

The Attorney General contends that ''here there was a clear waiver of the appellant's constitutional rights.'' In support of this position, the Attorney General relies on the testimony of Officer Madama. On *voir dire* examination the officer was questioned by defense counsel as follows: ''BY MR. LARSON:

''Q. Officer, at the time you spoke to Mr. Diaz had he been placed under arrest? A. Yes.

''Q. And had the other co-suspects also been placed under arrest? A. Yes.

''Q. Did you ever tell him at that time that anything he said to you would be used in evidence against him? A. No, he [*sic*] did not.

''Q. Was he ever told by you or any other officer in your presence that anything he said to you could be used in evidence against him? A. No.

''Q. Was he ever told before he spoke to you that he had a right to contact an attorney if he so desired? A. No, he wasn't.

''Q. Did he ever make any request to make any type of a telephone call before he spoke to you? A. Not to me, no.

''Q. And before he spoke to you or your fellow officer he had a right to call an attorney if he wanted to; was he told that? A. Yes, he was.

"Q. And were you present at that time, Officer, at the time that was done? A. Yes, I was present."

The Attorney General directs our attention to the officer's testimony that defendant was informed that "he had a right to call an attorney if he wanted to," and argues that, since defendant apparently made no effort to contact an attorney, that he waived his right to have counsel present during his interrogation. From this premise, it is further argued "that if an accused was advised either of his right to counsel or of his right to remain silent, that such advice would satisfy the rule of Escobedo." The latter argument is without merit. *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], clearly indicates that a defendant must be informed *both* of his right to counsel and of his privilege against self-incrimination. In *People* v. *Stockman, supra,* 63 Cal.2d 494, 501 [decided Nov. 10, 1965), our Supreme Court, quoting language in a recent opinion of the Supreme Court of Oregon, stated that, " 'the Sixth Amendment as made obligatory by the Fourteenth Amendment requires that before law enforcement officials can interrogate a person who is the focal suspect of a crime, such person must effectively be informed of his right to assistance of counsel as well as his right to remain silent.' [Citation.]" Since the record in this case shows that defendant was not advised of his right to remain silent, we need not decide the question whether there was sufficient evidence presented to support a finding that defendant was informed of his right to counsel and thereafter waived such right.

The order denying the motion for new trial is reversed.

KINGSLEY, J.—I concur: The rules developed in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], in *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and in the cases applying those decisions, are designed to effect that compromise between conflicting social ends which the application of constitutional principles always involves.

On the one side, as the Supreme Court has pointed out most recently in *People* v. *Cotter* (1965) 63 Cal.2d 386 [46 Cal.Rptr. 622, 405 P.2d 862], is the need to permit full police investigation and to encourage the frequent desire of a guilty man to confess. On the other side is the realization that the processes of police investigation and interrogation may result

in statements which fall short of complete truth and which may involve an innocent man in such a tangle of lies and equivocations as to make it impossible for him later to escape, with the result that an unjust conviction follows. It is a traditional function of counsel to see that this kind of error does not occur and that an arrestee is not tricked—intentionally or innocently—into making statements which he should not make.

The dilemma has been resolved by admitting statements, clearly voluntary, where no possible stimulus from police interrogation appears, and by admitting statements made while the police were still in the investigatory stage and in a mood to accept exculpatory statements if they carried persuasive force or were verifiable. But, once police activity has reached the point of taking a definite suspect into custody and the officers are seeking, by interrogation, not to solve a possible crime but to secure confirmation of their suspicions, then the suspect must be warned affirmatively that he need not provide that confirmation out of his own mouth and that he may consult with an independent professional advisor as to the potential effect of any statement. Absent evidence not before us on this record, we may not speculate as to how far a statement, made at this point in the process of police activity, was induced by the interrogation; nor am I inclined to engage in a scholarly discussion over the meaning of the word ''elicit''; constitutional rights should not depend on semantics.

For these reasons, I cannot accept the argument of our dissenting colleague. Defendant had been interrogated and he knew that he had been taken to the main police station and placed in an interrogation room at that station for the purpose of continuing that interrogation. The fact that he decided, during a lull in the over-all process, to obviate the need for further questioning by making a full confession does not make that confession any the less the product of the interrogation already begun and clearly still in process.

The admission of that confession violated the rules set forth in Justice Jefferson's opinion and above discussed; a reversal is compelled.

FILES, P. J., Dissenting.—I would affirm the order. As I read the record it shows, without conflict, that defendant's confession was subsequent to police interrogation but was not elicited by it. This is not a case like *People* v. *Luker*, 63

Cal.2d 464, 473 [47 Cal.Rptr. 209, 407 P.2d 9], and *People* v. *North,* 233 Cal.App.2d 884, 887 [44 Cal.Rptr. 123], where the evidence was ambiguous or incomplete. The testimony of the officer and of the defendant himself establish that he confessed because he wanted to clear his friends and not because the police had asked him to.

"Neither [the California Supreme Court] nor the United States Supreme Court, has ever taken the position that the desire of a guilty man to confess his crime should be stifled, impeded, discouraged, or hindered in any way. The contrary is true." (*People* v. *Cotter,* 63 Cal.2d 386, 396 [46 Cal. Rptr. 622, 405 P.2d 862].)

The substance of defendant's testimony was that he tried to save his friends by telling the police a lie, but it was quite reasonable for the trial court to believe, after seeing and hearing the witnesses, that defendant had saved his friends by telling the truth.

The fountainhead of the exclusionary rule is the statement in *Escobedo* v. *Illinois,* 378 U.S. 478, 491 [84 S.Ct. 1758, 12 L.Ed.2d 977, 986], that "no statement elicited by the police during the interrogation may be used against him at a criminal trial." Elicit means "to draw or bring out." One of its synonyms is "cause." (Webster's Third New International Dictionary.) I do not think we should go beyond the *Escobedo* rule to keep out of evidence voluntary statements which were not brought out or caused by police interrogation.

A petition for a rehearing was denied December 28, 1965. Files, P. J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied February 2, 1966. Mosk, J., was of the opinion that the petition should be granted.