[Crim. No. 13991.    Second Dist., Div. One.    July 1, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN ALEX-ANDER SMITH, Defendant and Appellant.

Jack A. Rose, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—John Alexander Smith appeals from the judgment by the court, sitting without a jury, finding him guilty of four counts of kidnaping and forcible rape.

In an amended information filed by the District Attorney of Los Angeles County, appellant was charged in four counts with kidnaping and forcible rape. It was therein alleged as follows: count I, that on or about February 1, 1967, Smith did wilfully, unlawfully, feloniously and forcibly kidnap and carry away Delores Burton; count II, that on or about November 1, 1966, Smith did wilfully, unlawfully, feloniously and forcibly steal, take and arrest Audrey George, and carry the said Audrey George to another part of Los Angeles County; count III, that on or about November 1, 1966, Smith did wilfully, unlawfully, feloniously and with force and violence overcoming her resistance have and accomplish an act of sexual intercourse with and upon Audrey George, a woman who was not then and there defendant's wife, without her consent and against her will; count IV, that on or about January 21, 1967, Smith did wilfully, unlawfully and feloniously and forcibly attempt to steal, take and arrest Karla [sic] Bradswell [sic] to another part of Los Angeles County. The court found Smith guilty as charged, denied probation and sentenced him to the state prison for the term prescribed by law, the sentences as to counts I, II and IV to run concurrently and the sentence on count III stayed pending appeal.

Appellant contends that the evidence was insufficient to sustain his conviction for the rape of Audrey George, and as to that contention we have further reviewed the record to determine whether defendant was denied due process when he was subjected to a one-man showup for identification by Delores Burton. We conclude that appellant was convicted on sufficient evidence and that he was not deprived of due process by the identification procedure. The sequence of events resulting in the charges herein related follow in chronological order.

At about 10 p.m. on November 1, 1966, Miss Audrey George, then 21 years of age, was sitting on a bench at the corner of Vernon and Vermont Avenues waiting for a bus. Suddenly defendant came up behind her, placed a pointed metal file against her neck, took hold of her arm and ordered her to get up and accompany him. He walked her down Vermont Avenue and up a side street holding the file tip against her neck and threatening that if she screamed or tried to escape he would kill her. Then he forced her to enter a vacant house, remove her lower clothing and submit against her will to an act of intercourse, all by the use of force and threats of harm. Once the act was completed, Smith allowed Miss George to dress, and accompanied her back to Vermont Avenue. He remained with her while she called a friend, Edward Johnson, to come and get her, then left her at the bus stop to await Johnson's arrival. These events took about an hour, and about 15 minutes later Johnson picked up Miss George and took her home. When Johnson learned what had happened to her he called the police and Miss George, who was single and had never before had sexual intercourse, made a personal report to the police in the morning. At that time she described her attacker to the police and several months later she identified him in a police lineup.

At about 9:30 p.m. on January 21, 1967, Mrs. Carla Braswell arrived home and parked on 38th Street around the corner from her apartment. She locked her car and as she started to walk toward her apartment, the defendant approached her to ask where Vernon was located. She replied that it was about two blocks south and as she turned away, Smith grabbed her left arm and threatened her with a long screwdriver, telling her that if she screamed he would kill her. He then walked his victim back to the driver's side of her car and told her to unlock the door. She said that if he wanted the key, he would have to get it out of her purse for himself because she was too nervous. Smith took the purse and as he searched for the key a station wagon pulled around the corner. Mrs. Braswell ran to the station wagon and told the occupants that a man was trying to molest her. The driver started to park the car, but Smith threatened to kill the occupants if they got out of the car. While Smith was preoccupied in this manner, Mrs. Braswell ran to her apartment and told her husband what had happened. He called the police and when they arrived Mrs. Braswell accurately described appel-

lant. About a week later she identified him from a police lineup.

At about 11 p.m. on February 1, 1967, Miss Delores Burton was standing on a street corner near Santa Barbara and Vermont in Los Angeles when appellant came up behind her, took hold of her arm, and threatened her by holding a long metal object against her neck. He told her that if she screamed or attempted to run he would blow her brains out. He forcibly walked her away from Santa Barbara Avenue down a side street holding his weapon, a metal screwdriver, against her side. He took her to some shrubbery growing in a nearby alley and there he commanded her to undress. She started to remove her clothes, then told him she thought she saw the police coming, and when appellant stooped to retrieve his screwdriver, she ran. Miss Burton ran toward lights and did not stop until she came to the entrance of the Food Giant market on Santa Barbara. Appellant chased her to the market, but ran away when he saw people standing near the entrance. Miss Burton went to her home a couple of blocks away and then called the police, who arrived at her residence promptly. She described her assailant to them and was taken immediately to the police station.

On the same evening, John Wesley was sitting in his car in the parking lot at the Food Giant market on Santa Barbara near Vermont. Miss Burton ran directly in front of his car, followed closely by Smith who was chasing her. When Miss Burton reached the entrance of the market, Mr. Wesley observed that Smith kept going straight across the street. Mr. Wesley left the parking lot in his car to follow the defendant and a short distance away he met the police car in which Officer Jay Krech was patrolling the area with his partner. It was a cold night and the officers had noticed the defendant walking down 40th Place near Vermont because he was wearing dark trousers with a short sleeved T-shirt and carrying his jacket over his arm, which had caused them to comment. Soon they met John Wesley, who described Miss Burton's assailant and the description reminded the officers of the man they recently had seen. John Wesley followed the patrol car until, less than 10 minutes later, they apprehended appellant, who was perspiring and appeared to be very warm, as if he had been running or working out. They placed Smith in custody and took him to the police station.

When Miss Burton arrived at the police station at about 11:30 p.m. she was taken to see a person who was sitting in another room with a police officer and she was asked whether

that was the person who had attacked her. She responded that it was the same man. Later the same night she viewed a police lineup of several suspects and she again positively identified appellant.

Appellant testified in his own defense, denying categorically each of the crimes charged. He stated that he was 19 years old, single, and lived with his mother, Mrs. Emma Jean Smith. He and his mother testified that on November 1, 1966, his mother received an income check and they went to the store where they purchased a commercial preparation to remove the curl from hair. Later they returned home, each processed the other's hair, and about midnight went to bed. Appellant, his mother, and Mrs. Rebecca Cain testified that appellant was at the Cain home on January 21, 1967. Mrs. Cain was planning a wedding reception for her son and she picked up appellant early on the afternoon of January 20, 1967, (the morning of January 21, 1967, according to the testimony of appellant's mother) to help her with the heavy cleaning in preparation for the reception. Appellant's mother did not see him again after Mrs. Cain had picked him up until the morning of Sunday, January 22, 1967. From the time of his arrival at the Cain residence until around 6 p.m. on the evening of Saturday, January 21, appellant worked with Mrs. Cain mopping, vacuuming and washing the house. They then ate dinner and appellant remained until midnight playing records with Mrs. Cain, her sons Clarence and Roland, and Roland's wife. Thereafter, appellant went with Clarence to a girl's house where they stayed until Clarence brought appellant home about 3 or 4 a.m. on Sunday.

As to February 1, 1967, appellant claimed that he spent the evening at Mrs. Narva Beaty's house and was on his way home when he was taken into custody by two officers in a patrol car. Appellant testified that the officers took him, at his request, back to the Beaty house and then released him despite the fact that she was no longer home when they arrived. Mrs. Beaty, however, testified that she was at home when the officers returned that evening and she told them that appellant had just left her home. Appellant said that he was arrested again later the same evening and taken to the police station where he was identified by Miss Burton, but he denied having seen her earlier. According to the testimony of Officer Krech, appellant was apprehended only once that evening and taken immediately to the police station where Miss Burton identified him. The only other officers on duty that evening

had no contact with appellant and Officer Krech, who did not recall any conversation relating to Mrs. Beaty, denied visiting her home with appellant.

■ Appellant contends that the prosecution failed to produce evidence that Audrey George was not married to appellant and that therefore his conviction on the charge of raping Audrey George must be reversed. Appellant relies solely upon the fact that the prosecution failed to ask Audrey George whether or not she was married to appellant. The prosecution, however, adduced ample circumstantial evidence to establish that both appellant and Miss George were single persons, and that the victim had never before had sexual intercourse. The unmarried status of the victim need not be shown by direct evidence (*People* v. *Wilson,* 218 Cal.App.2d 564, 565 [32 Cal.Rptr. 406]), but may be demonstrated by circumstantial evidence where no direct question is asked. (*People* v. *Burroughs,* 200 Cal.App.2d 629, 633 [19 Cal.Rptr. 344].) The case relied upon by appellant in support of his contention held merely that where the prosecution failed to establish by other evidence the elements of a prima facie case of rape, including the nonexistence of the marital relationship, the defendant's alleged confession was inadmissible. (*People* v. *Henry,* 142 Cal.App.2d 114 [298 P.2d 80].) In the present case the victim identified herself to police as Miss Audrey George, testified that she never had sexual intercourse prior to the act of rape committed upon her by appellant, and she was repeatedly referred to by both prosecutor and defense counsel as ''Miss'' in a tacit admission that all recognized her unmarried status. Appellant, moreover, testified that he was a single male, thus refuting any inference that he was married to the victim. Finally, implicit in all the evidence presented is the fact that neither appellant nor Miss George had seen or met one another, but were complete strangers prior to the criminal episode. Substantial evidence thus establishes that the victim was not married to her attacker.

■ Finally, although the record discloses that appellant was sitting in a room only with a police officer when he was first viewed and identified by Miss Delores Burton at the police station, we find that under the total circumstances of this case this identification exposed appellant to no injustice. Appellant was charged with being, and the evidence adduced at the trial established the clear inference that he was, the perpetrator of a series of similar attempts to kidnap and rape young women, all within a short period of time and within the same geographical area. He was clearly identified by his

other victims from a properly conducted police lineup. Appellant wore the same clothing that he had worn at the time of the offense upon Miss Burton, his appearance was fresh in the victim's mind, and his physical condition when apprehended by police revealed that he had been running. Both Delores Burton and John Wesley had the opportunity of observing appellant full face in a lighted area, and he matched the description each had given to police. Because John Wesley had followed in fresh pursuit and identified for police the man he saw chasing Miss Burton, her identification was required merely to confirm defendant's identity. Moreover, appellant had no adequate alibi for his whereabouts on the evening in question.

Although a situation in which a suspect is placed in the position of being the only person to be identified is potentially unfair (*United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *People* v. *Caruso,* 68 Cal.2d 183, 187-190 [65 Cal.Rptr. 336, 436 P.2d 336]) one in which the circumstances of the case demonstrate that the identification was correct and in no way untrustworthy, provides no denial of due process of law. (*Stovall* v. *Denno,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) ''Here was a confrontation proximate to the scene and time of the offense as well as the apprehension, where the observers and actors were limited to those that were in fact present at the scene and time of the offense and the chase. Here were circumstances of fresh identification, elements that if anything promote fairness, by assuring reliability, and are not inherently a denial of fairness . . . [We] do not consider a prompt identification of a suspect close to the time and place of an offense to diverge from the rudiments of fair play that govern the due balance of pertinent interests that suspects be treated fairly while the state pursues its responsibility of apprehending criminals." (*Wise* v. *United States,* 383 F.2d 206, 209-210.) We find in the present case no denial of due process of law.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.