[Crim. No. 13675.   Second Dist., Div. Five.   Dec. 9, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RUSSELL LEE SINGLETARY, Defendant and Appellant.

Oliver W. Holmes, Jr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Larry Ball, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, J.—Defendant was charged by information with one count of rape, in violation of Penal Code section 261, subdivision 4; one count of robbery, in violation of Penal Code section 211; and two counts of burglary, in violation of Penal Code section 459. Defendant pleaded not guilty. After a jury trial, defendant was found guilty as charged on all four counts of the information. The trial court reduced the bur-

glary charge in count IV to burglary in the second degree. Defendant's motion for a new trial was denied. Probation was denied and defendant was sentenced to state prison for the terms prescribed by law.

On October 19, 1966, at approximately 11:45 p.m., the victim arrived home at her Malibu apartment and went to bed. A short time later, she was awakened by defendant, who had his hand on her shoulder and was sitting on the edge of her bed. Defendant then forced his victim to remain passive by poking a sharp pointed object into her neck. While holding this sharp object at her neck, defendant removed her clothing and accomplished an act of sexual intercourse. He then tied his victim with nylon stockings, took $20 from her purse, and fled. The victim called a friend of hers, who arrived shortly thereafter and called the police.

A few weeks after the incident described above, the victim identified defendant at the Malibu sheriff's station as her assailant. Defendant was the only person shown to her. The record discloses that the victim had observed the defendant for 30 to 45 minutes in her room, under adequate illumination to permit observation of her assailant's features and physical characteristics. On several occasions prior to the sheriff's station identification, she had observed various mug shots of at least 40 to 50 individuals, and had given a description of the perpetrator. A composite drawing was made from this description. She identified none of the pictured men as her assailant, but stated that the drawing more closely resembled him. In court, she positively identified defendant, and testified that at the time of the offense she was able to see defendant clearly in the light of a street lamp and the moon.

On October 25, 1966, one Miss Di Bert spent the night at the Casa Malibu Motel, room 4. When she awoke the next morning, a purse which she was using as an overnight bag, and another handbag were found to be missing. Among other things, the purse contained a box of cotton squares. She subsequently recovered the purse and the box of cotton squares at the Malibu sheriff's station. One Mr. Simpson also spent that night at the Casa Malibu Motel, room 4. When he awoke, he discovered that his wallet containing approximately $270 was missing from the room. The wallet was returned to Mr. Simpson at the station.

Fingerprints which had been lifted from the box of cotton squares and from a door knob on the inside of the front door

of room 4 matched defendant's fingerprints, according to the testimony of a fingerprint expert of the sheriff's office.

At approximately 3:30 a.m. on November 15, 1966, Deputy Sheriff Addone observed defendant driving eastbound on Pacific Coast Highway. Defendant's vehicle made a left turn in front of the police car and drove into a driveway of an apartment building. It proceeded behind the apartment building, came out the other side, and reentered the highway in front of the police vehicle. Due to the lateness of the hour, reports of numerous burglaries in the area, and the movements of the vehicle, the officer stopped defendant's vehicle. Defendant produced a New York chauffeur's license, but was unable to produce the registration for the car. A routine check revealed that the license plates on the car were reported lost or stolen, and that the car itself was stolen. Defendant was placed under arrest for grand theft auto, advised of his constitutional rights, and searched. A key, subsequently identified as one belonging to the Casa Malibu Motel, was found in defendant's left front pants pocket.

Defendant's first contention on this appeal is that the officer was without reasonable or probable cause to stop his vehicle, and therefore the evidence admitted against him was obtained through an illegal search and seizure. ■ It is well established that a police officer in the discharge of his duties may detain and question a person when the circumstances are such as would indicate to a reasonable man in a like position that such a course is necessary to the proper discharge of those duties. (*People* v. *One 1960 Cadillac Coupe,* 62 Cal.2d 92, 95-96 [41 Cal.Rptr. 290, 396 P.2d 706].) ■ In *People* v. *Mickelson,* 59 Cal.2d 448, 450-451 [30 Cal.Rptr. 18, 380 P.2d 658], the rule governing police procedures is stated as follows: "[W]e have consistently held that circumstances short of probable cause to make an arrest may still justify an officer's stopping pedestrians or motorists on the streets for questioning. . . . Should the investigation then reveal probable cause to make an arrest, the officer may arrest the suspect and conduct a reasonable incidental search. [Citations.]" (See also *People* v. *Blodgett,* 46 Cal.2d 114, 117 [293 P.2d 57]; *People* v. *Sullivan,* 242 Cal.App.2d 767, 770 [51 Cal.Rptr. 778]; *People* v. *Diaz,* 238 Cal.App.2d 636, 638 [48 Cal.Rptr. 20].) ■ In the present case, the lateness of the hour, the numerous burglaries in the area, and the movement of defendant's vehicle clearly constituted sufficient cause to stop defendant for routine interrogation. (See *People* v.

*Porter,* 196 Cal.App.2d 684, 686 [16 Cal.Rptr. 886] and *People* v. *Ellsworth,* 190 Cal.App.2d 844, 846 [12 Cal.Rptr. 433].) When investigation thereafter established reasonable cause to believe defendant had committed a felony, his subsequent arrest and the incidental search of his person and vehicle were permissible. (*People* v. *Talley,* 65 Cal.2d 830, 835 [56 Cal. Rptr. 492, 423 P.2d 564]; *People* v. *Hillery,* 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208]; *People* v. *Cockrell,* 63 Cal.2d 659, 665 [47 Cal.Rptr. 788, 408 P.2d 116]; *People* v. *Williams,* 255 Cal.App.2d 653, 659 [63 Cal.Rptr. 501].)

Defendant next contends that his confrontation with the identifying witness, the rape victim, at the Malibu sheriff's station without the assistance of counsel was in violation of *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926] and *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; constituted a denial of due process of law in contravention of *Stovall* v. *Denno,* 388 U.S. 293 [18 L.Ed.2d 1199, 87 S.Ct. 1967]; and tainted the later in-court identification of him by her as her assailant.

■ The position that defendant was denied his constitutional rights when he was required to appear at a show-up without the assistance of counsel is not well taken. Since the show-up took place prior to June 12, 1967, the date of the decisions in *Wade* and *Gilbert,* he may not rely on those cases in order to assert a right to counsel grounded in the Sixth and Fourteenth Amendments; instead, he must demonstrate that the show-up procedure resulted in a denial of due process of law. (*People* v. *Haston,* 69 Cal.2d 233, 257 [70 Cal.Rptr. 419, 444 P.2d 91]; *People* v. *Harris,* 67 Cal.2d 866, 872 [64 Cal.Rptr. 313, 434 P.2d 609]; *People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) ■ The fact that this was a single person show-up did not vitiate its fairness or trustworthiness. In *People* v. *Smith,* 263 Cal.App.2d 631, 637 [69 Cal.Rptr. 670]; it is said: "Although a situation in which a suspect is placed in the position of being the only person to be identified is potentially unfair (*United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178. 87 S.Ct. 1951]; *People* v. *Caruso,* 68 Cal.2d 183, 186-189 [65 Cal.Rptr. 336, 436 P.2d 336]) one in which the circumstances of the case demonstrate that the identification was correct and in no way untrustworthy, provides no denial of due process of law. (*Stovall* v. *Denno,* 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967]; *People* v. *Feggans,* 67 Cal.2d 444, 448

[62 Cal.Rptr. 419, 432 P.2d 21].)'' In *Simmons* v. *United States* (1968) 390 U.S. 377, 384 [19 L.Ed.2d 1247, 1253, 88 S.Ct. 967], in discussing the use of photographs in aid of identification, the court states the rule applicable: ''We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall* v. *Denno*, 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967], and with decisions of other courts on the question of identification by photograph.[5]'' ''[5]See, e.g., *People* v. *Evans*, 39 Cal.2d 242 [246 P.2d 636].''

Certainly, the evil to be avoided in the matter of identification is misidentification, and to avoid this evil, unnecessarily suggestive identification procedures may not be tolerated. But where, as here, the victim established the accuracy of her independent recollection of the perpetrator, a ''one-person'' lineup is not necessarily suggestive. Furthermore, the proof is clear and convincing that the in-court identification by the witness was based solely on her independent observation of defendant at the scene of the assault.

The judgment is affirmed.

Kaus, P. J., and Aiso, J., concurred.