[Crim. No. 13189. In Bank. Dec. 11, 1969.]

THE PEOPLE, Plaintiff and Respondent, v.
FRED FRANK BAUER, Defendant and Appellant.

**COUNSEL**

Fred Frank Bauer, in pro. per., Don Edgar Burris, under appointment by the Supreme Court, and Donald F. Roeschke, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter E. Wunderlich, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**PETERS, J.**—After a jury trial, defendant was found guilty of burglary in the first degree, robbery in the first degree, grand theft and automobile theft. The jury found that he was armed at the time of the commission of each offense. The jury acquitted him on a charge of kidnaping to commit robbery. Defendant was given concurrent sentences of imprisonment for

robbery and auto theft. He was not sentenced on the burglary and grand theft counts.

Lorraine Baer, Rose Helbig, and Maybell Cascino, three elderly ladies resided together in a house in Ventura. At approximately 5 in the afternoon of October 3, 1966, defendant and another man rang the doorbell and introduced themselves as gas company maintenance men, who wished to check the stove. Defendant was carrying what appeared to be a diagram or map, and both men were wearing gloves.

After gaining admittance, defendant drew a revolver and his accomplice a knife. Two of the women were forced to lie face down on the floor and their hands were tied with wire. The third was tied to a chair. The three women were blindfolded with pillowcases, which slipped sufficiently to permit the women to observe defendant and his accomplice. When a blindfold slipped from the face of one of the women, defendant struck her.

The three women observed defendant and his accomplice ransack the house and carry the loot to the garage. After about two hours, defendant and his accomplice drove away in the car of Maybell Cascino. Each of the women found that numerous items of her personal property had been taken, and two of them noticed that several credit cards were missing.

That evening police officers brought mug books to the victims' home. The next morning two of the women attended a lineup at the police station but were unable to identify any of the suspects.

Nearly a week later Officer Stoen observed a Chevrolet travelling approximately 40 miles per hour in a 25-mile-per-hour zone with the right taillight out and a damaged fender. He followed it and observed it cross over the center line six or seven times. He stopped the Chevrolet.

Defendant emerged from the car, gave a fictitious name and said he did not have a driver's license. His manner of speech was slow and slurred. Upon request for identification, he said he had just taken his wife to have a baby and that she had everything. He did not remember where he had taken his wife. After a request for his registration, defendant reached beneath the front seat and pulled out the folder portion of a wallet and extracted an expired, temporary driver's license. The height identification was altered. Noting defendant's general condition and that the pupils of his eyes appeared pinpointed, the officer concluded that he was under the influence of narcotics and arrested him for being in that condition and for being an unlicensed driver. The officer radioed for another police car.

The officer advised defendant that "he had a right to remain silent at all times and that anything he did say could be used against him in a court of

law, and that he could at any time have an attorney present and at all times be represented by an attorney if he so desired; that in the event he was unable for any reason to obtain an attorney, one would be provided for him to represent him."

Upon being advised of his rights, defendant said he knew his rights, and in response to a question said: "I shot just before you got me. . . . I'm a hype and you know it."

The officer searched the automobile and found narcotics equipment, a knife, a box containing gloves, a telephone-type workman's belt with equipment attached, a camera, and a set of blueprints. Beneath the floor mat of the trunk was a license plate and a white bag containing several credit cards bearing the names Helbig and Cascino, and a pink slip to the latter's car.

Each of the victims of the robbery was shown four photographs and, without the other two knowing her selection, each identified defendant's photograph. The victims then went to the police station where they observed defendant through a one-way mirror, and in the presence of each other, each identified defendant.

Defendant denied commission of the robberies and testified that he was in another area of the city when the robbery began and returned to his home at a time which was shortly before the robbery was concluded. As to the time he returned home, he was corroborated by his wife and mother. His mother testified that she remembered the day because her daughter-in-law was expecting a child and she (the mother) had gone to her son's home that evening. Defendant's wife testified that the date was four days before the birth of her child, that her mother and father-in-law came over for dinner as shown by her calendar, that defendant called at 5 p.m., and came home between 6 p.m. and 6:30 p.m., and that because her father-in-law did not like to drive at night he and her mother-in-law spent the night. She also testified that it was about a two-hour drive from Montebello, where she lived, to Ventura, where the robbery occurred.

The extrajudicial identification in the instant case occurred prior to *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and the rules enunciated in that case have been held inapplicable to lineups occurring prior to that decision. (*People* v. *Feggans,* 67 Cal.2d 444, 448 [62 Cal.Rptr. 419, 432 P.2d 21].) ■ The question is whether the extrajudicial identification resulted in a denial of due process in that a lineup was unnecessarily suggestive and conducive to irreparable mistaken identification. (*Stovall* v. *Denno,* 388 U.S. 293, 301-302 [18 L.Ed.2d 1199, 1205-1206, 87 S.Ct. 1967]; *People* v. *Caruso,* 68 Cal.2d 183, 187-189 [65 Cal.Rptr. 336, 436 P.2d 336]; *People* v. *Feggans,*

*supra*, 67 Cal.2d 444, 449.) Whether a lineup was so unnecessarily suggestive depends on the totality of circumstances. (*Stovall* v. *Denno*, *supra*, 388 U.S. 293, 302 [18 L.Ed.2d 1199, 1206, 87 S.Ct. 1967].)

■ The "single showup" is not inherently unfair. (*Stovall* v. *Denno*, *supra*, 388 U.S. 302; *People* v. *Burns*, 270 Cal.App.2d 238, 246 [75 Cal.Rptr. 688]; *People* v. *Singletary*, 268 Cal.App.2d 41, 45 [73 Cal.Rptr. 855]; *People* v. *Irvin*, 264 Cal.App.2d 747, 759-760 [70 Cal.Rptr. 892]; *People* v. *Smith*, 263 Cal.App.2d 631, 636-637 [69 Cal.Rptr. 670]; *People* v. *Romero*, 263 Cal.App.2d 590, 593-594 [69 Cal.Rptr. 748].) Rather we must look to all of the circumstances. When this is done, there was no denial of due process. The witnesses had a substantial opportunity to observe the robbers during the robbery. This was not a case of a hurried look in circumstances where there was no reason to observe with particularity. (Cf. *People* v. *Caruso*, *supra*, 68 Cal.2d 183, 187-189.) Each of the witnesses rejected a number of mug shots and two of them also rejected the participants in another lineup before making the identification. The identification was first made through photographs, each witness proceeding separately picking the same photograph. Finally, there was substantial corroborating evidence.

■ Defendant urges that the admonition given to him by the officer at the time of his arrest did not comply with *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], because the officer did not advise him that if he could not afford an attorney one would be appointed. However, the officer told him that if he was unable "for any reason to obtain an attorney," one would be provided. The admonition given by the officer, in the light of the quoted term, was even broader than that required.

■ Defendant also urges it was error to admit his statement made after the *Miranda* admonition on the ground that he was under the influence of narcotics when he made the statement and thus could not knowingly and intelligently waive his rights. However, the statement was to the effect that he was under the influence of narcotics, and defendant may not be permitted to obtain exclusion of a statement that he is under the influence of narcotics on the sole ground that he in fact was under the influence of narcotics.

Defendant claims that the search of his car and its trunk by the officer was unlawful. His contentions in this regard are predicated either on the inadmissibility of his statement that he was under the influence of narcotics or upon *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]. As we have seen, however, the statement was admissible. ■ The

search in the instant case took place prior to June 23, 1969, and under the compulsion of *People* v. *Edwards,* 71 Cal.2d 1096, 1106 et seq. [80 Cal.Rptr. 633, 458 P.2d 713], it must be held that *Chimel* is not applicable.

 Defendant next contends that the prosecution suppressed evidence and used perjured testimony in relation to the testimony of one of the victims. Affidavits of a niece of the victim and of the niece's husband have been attached to the brief, and they state that the victim had stated she was convinced that the niece's husband "had participated in some way in the robbery" and if not him then the niece and that law enforcement officials had said that the husband had been identified as the robber. It is obvious that the victim's statement to the niece is consistent with the view that she believed the robbers somehow had information with regard to the home and its occupants and had somehow been helped by her niece or the latter's husband. The statements of the victim are not contrary to her testimony. The law enforcement officials are not identified in the affidavits, and in the circumstances the affidavits do not make a sufficient showing of perjury or suppression of evidence.

It is next urged that in the circumstances of this case it is improper to punish for both *robbery of the first degree* and *for car theft.* Section 654 of the Penal Code provides in part: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one." Subject to constitutional limitations, the Legislature has the power to prescribe punishment for crime (*People* v. *Knowles,* 35 Cal.2d 175, 181 [217 P.2d 1]), and the question before us is the proper interpretation of the section.

It has often been stated that the prohibition of the statute against double punishment applies where one offense is necessarily included in another. (E.g., *People* v. *Knowles, supra,* 35 Cal.2d 175, 186-187 [kidnaping for purposes of robbery and robbery].) In such a case double conviction is also prohibited (*People* v. *Greer,* 30 Cal.2d 589, 597-598 [184 P.2d 512]), and the question of double punishment would ordinarily seem moot. The rule of liberal construction in favor of the defendant is obviously applicable to section 654, and the decisions of this court have not rendered the statute meaningless by limiting the operation of section 654 to cases of necessarily included offenses.

 It is well established that the prohibition against double punishment is not limited to necessarily included or identical offenses or to cases where but one act in the ordinary sense occurs. (E.g., *People* v. *Kynette,* 15 Cal.2d 731, 761-762 [104 P.2d 794] [attempted murder, assault with

intent to murder, and malicious use of explosives]; *People* v. *Greer, supra,* 30 Cal.2d 589, 603 [statutory rape and lewd and lascivious conduct]; *People* v. *Kehoe,* 33 Cal.2d 711, 713 [204 P.2d 321] [theft and driving vehicle without owner's consent]; *People* v. *Knowles, supra,* 35 Cal.2d 175, 187 [kidnaping and robbery]; *People* v. *Roberts,* 40 Cal.2d 483, 491 [254 P.2d 501] [possession and transportation of heroin incident to sale]; *People* v. *Logan,* 41 Cal.2d 279, 290-291 [260 P.2d 20] [robbery and assault with a deadly weapon]; *People* v. *Brown,* 49 Cal.2d 577, 590-594 [320 P.2d 5] [abortion and murder]; *Neal* v. *State of California,* 55 Cal.2d 11, 18-20 [9 Cal.Rptr. 607, 357 P.2d 839] [arson and attempted murder]; *People* v. *McFarland,* 58 Cal.2d 748, 760-762 [26 Cal.Rptr. 745, 376 P.2d 449] [burglary and theft]; *People* v. *Quinn,* 61 Cal.2d 551, 555-556 [39 Cal.Rptr. 393, 393 P.2d 705] [theft and possession of narcotics, theft of money, and robbery]; *In re Cruz,* 64 Cal.2d 178, 180-181 [49 Cal.Rptr. 289, 410 P.2d 825] [conspiracy and theft]; *In re Ward,* 64 Cal.2d 672, 675-676 [51 Cal.Rptr. 272, 414 P.2d 400] [kidnaping for purposes of robbery and robbery]; *In re Henry,* 65 Cal.2d 330, 331-333 [54 Cal.Rptr. 633, 420 P.2d 97] [robbery and assault with a deadly weapon]; *In re Johnson,* 65 Cal.2d 393, 394-395 [54 Cal.Rptr. 873, 420 P.2d 393] [one sale of heroin involving two deliveries].) The recent case of *In re Hayes,* 70 Cal.2d 604, 606, fn. 1 [75 Cal.Rptr. 790, 451 P.2d 430], expressly pointed out that there was no intent to depart from these rules.

Section 654 has not been amended since its enactment in 1872, and in the light of the longstanding construction of the section as not being limited to cases of necessarily included or identical offenses or to cases where but one act in the ordinary sense occurs, we must conclude that the Legislature did not intend to so limit it.

■ The proscription against double punishment in section 654 is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute within the meaning of section 654. The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one. (*In re Ward, supra,* 64 Cal.2d 672, 675-676; *People* v. *Quinn, supra,* 61 Cal.2d 551, 555-556; *People* v. *McFarland, supra,* 58 Cal.2d 748, 760; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 19; *People* v. *Brown, supra,* 49 Cal.2d 577, 591.)

■ Under this principle, the taking of several items during the course of a robbery may not be used to furnish the basis for separate

sentences. In *Ward* the defendant required the owner of a car at the point of a gun to drive him and an associate through Oakland in search of female companions, robbed the car owner of his watch and some money during the course of the ride, and subsequently took control of the automobile. It was held that the robbery occurring during the kidnaping, whether or not there was an original intent to rob, made the crime kidnaping for purposes of robbery and that defendant could not be punished for the robbery and the kidnaping. In *Quinn,* the defendant robbed a pharmacy of narcotics and money, and it was held that he could not be punished for both robbery and possession of narcotics. ▉ These cases make clear that where a defendant robs his victim in one continuous transaction of several items of property, punishment for robbery on the basis of the taking of one of the items and other crimes on the basis of the taking of the other items is not permissible.

▉ The Attorney General urges that the separate sentences for robbery and car theft may be upheld on the theory that the robbery was complete before the theft of the car began and that the theft of the automobile was an afterthought to the original transaction. ▉ The fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction. (E.g., *In re Cruz, supra,* 64 Cal.2d 178, 180-181 [conspiracy and theft]; *People* v. *McFarland, supra,* 58 Cal.2d 748, 760-762 [burglary and theft].) And the fact that one of the crimes may have been an afterthought does not permit multiple punishment where there is an indivisible transaction. (*In re Ward, supra,* 64 Cal.2d 672, 676.) The case of *People* v. *Quinn, supra,* 61 Cal.2d 551, 556, relied upon by the Attorney General is distinguishable. There the car theft occurred the night before the robbery, and the criminal conduct was not an indivisible transaction. ▉ Moreover, the evidence in the instant case does not show that the theft of the car was an afterthought but indicates to the contrary that the robbers, who while ransacking the house were carrying the stolen property to the garage, formed the intent to steal the car during the robbery if not before it.

The Attorney General's alternate theory to uphold the punishment for car theft is predicated on the fact that there was more than one victim. A number of cases have upheld multiple punishment for a single criminal transaction where crimes of violence were committed against different persons. (*In re Ford,* 66 Cal.2d 183 [57 Cal.Rptr. 129, 424 P.2d 681] [kidnaping for purposes of robbery and robbery]; *In re Wright,* 65 Cal.2d 650, 656 [56 Cal.Rptr. 110, 422 P.2d 998] [robbery and kidnaping]; *People* v. *Ridley,* 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124] [robbery and assault]; *Neal* v. *State of California, supra,* 55 Cal.2d 11, 21

[attempted murder of two victims]; *People* v. *Knowles, supra,* 35 Cal.2d 175, 189 [two kidnapings]; *People* v *Brannon,* 70 Cal.App. 225, 235 [233 P. 88] [murder and assault with a deadly weapon].)

 Where, however, the offenses arising out of the same transaction are not crimes of violence but involve crimes against property interests of several persons, this court has recognized that only single punishment is permissible. Thus, this court has pointed out that the theft of several articles at the same time constitutes but one offense although such articles belong to several different owners. (*People* v. *Smith,* 26 Cal.2d 854, 859 [161 P.2d 941]; cf. *People* v. *Lyons,* 50 Cal.2d 245, 275 [324 P.2d 556] [receiving stolen goods belonging to two owners].) This view has been followed "[i]n the vast majority of cases" where it has arisen or been discussed. (Annot. 28 A.L.R.2d 1182, 1184 et seq.) If the rule were otherwise a burglar who entered an empty house and took numerous articles belonging to one person could be punished for only one offense, but if some of the articles belonged to each of the other members of the family, the burglar could be given consecutive sentences for as many offenses as there are members of the family. The situation would be even more anomalous where stolen property was owned jointly or by a partnership.

 The crime of automobile theft is not a crime of violence but is a violation of property interests, and we are satisfied that the proscription against double punishment precludes punishment for this offense in the circumstances of the present case. *People* v. *Churchill,* 255 Cal.App.2d 448, 452 [63 Cal.Rptr. 312], which involved burglary and automobile theft is disapproved insofar as it is contrary to the views expressed herein.

The recitals in the judgment of conviction that defendant was armed with a deadly weapon should be modified to provide that at the time of the commission of the offense sections 3024 and 12022 were inapplicable but that defendant was armed within the meaning of section 1203 of the Penal Code. (*People* v. *Floyd,* 71 Cal.2d 879, 881-885 [80 Cal.Rptr. 22, 457 P.2d 862].)

The judgment is reversed and the cause remanded for resentencing in accordance with the views expressed herein.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

Respondent's petition for a rehearing was denied January 8, 1970.