[Crim. No. 39843. Second Dist., Div. Five. Apr. 28, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
DONALD JOSEPH DEGNER, Defendant and Appellant.

COUNSEL

Patricia Barberis, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Richard D. Marino, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STEPHENS, Acting P. J.**—Defendant was charged with murder in violation of Penal Code section 187.[1] He was convicted by jury of murder in the second degree.

The facts are that Mr. Smolk was killed and his body placed in a trash bin. Death was attributed to choking-suffocation. The body was found on October 5, 1980. The victim had owned a maroon and silver Buick Regal car, license No. 468YOQ, and a television set. The car was seen in the possession of a codefendant DeSoto and defendant and the television set recovered from defendant's locker.

A witness testified that DeSoto and defendant visited decedent on October 4, 1980, and the three were seen together in the Buick on that date. At a later time that same day, defendant and DeSoto arrived at a Ms. Madrid's house in the Buick and she went with them in the car. They stopped at a trash bin, purportedly to dispose of the body of a dead dog, and the two men got out of the car, opened the trunk, removed something from the trunk and put it in the bin. Ms. Madrid identified the trash bin in which the decedent's body was found as the one by which they had stopped for dumping purposes. Also Ms. Madrid saw the television in the car. The following day the two men visited her a second time. Another witness, one Frazier, testified to seeing DeSoto in possession of the Buick. Frazier overheard a conversation wherein defendant said he had spent the weekend in Los Angeles with DeSoto and that a friend had taken them to the bus station, that defendant had grabbed the friend by the throat, choked him and yanked him into the back seat, and that thereafter the friend's body was dumped into a

---

[1]He was also charged in a second count with grand theft in violation of Penal Code section 487. This count was dismissed on motion of the People.

dipsy dumpster trash bin. A detective Otterman testified to a statement made by defendant after his arrest. The statement had been recorded and the tape was played to the jury over defense objection. The tape was a confession. Otterman stated he read defendant his *Miranda* rights and had him sign the *Miranda* card at the bottom prior to obtaining the statement. Otterman said defendant waived his rights. The statement also contained a recounting of drug and alcohol ingestion by defendant prior to the victim's death.

 The defendant contends that it was error to admit the testimony of Ms. Madrid as to matters occurring after the death of the victim.[2] Defendant argues that the record does not establish that the court weighed the probative value of the evidence of the stop at the trash bin against the prejudicial effect. Defendant misreads the record. The court recognized that the Madrid testimony placed defendant at the bin in which the body was found; that defendant had assisted in placing something into the bin and that that something was purportedly a dead body, albeit that of a dog. The court clearly recognized the imperative nature of placing defendant in association with the body at the time in question. The cases relied upon by defendant are not in point.

 Defendant contends that the court erred in permitting the taped statement to be played to the jury. Defendant argues undue emphasis was thereby placed on the contents of the tape when a reading of a transcript would have sufficed. The court was presented with the same question as that presented in *People v. Richardson*█ (Cal.App.) wherein the court said: "The jury was then presented with the issue of whether the witness lied at the trial or in the statement to the officer. We can think of no better method for assisting the jury in that determination than permitting it to hear the previous statement in the witness' own voice.

"The jury was then able to hear the witness' manner of speaking and the content of his words and draw a comparison with his present testimony. Such evidence provided the jury with a better basis for determining whether the witness was under the influence of a drug and

---

[2]Respondent's brief argues that the record does not show the objection to the Madrid testimony was grounded on Evidence Code section 352. We believe that ground was adequately raised.

whether he was lying than would have been the case in simply hearing the officer narrate the conversation."

In the instant case this observation is particularly appropriate, for not only did defendant raise an issue of drug-alcohol use and its effect, he also raises an issue of *Miranda* waiver. Both issues are more readily considered when the voice of defendant is heard. This is so even though the initial ruling re voluntariness of the statement is a matter for the court to determine. Where, as here, the issue of intent is of such importance, the jury was better able to determine that issue when it had before it not only the words uttered but the manner of delivery. Among defendant's contentions here is a claim that there was insufficient evidence to establish the intent necessary for murder. There was evidence through Ms. Madrid that defendant was not intoxicated and defendant's clarity of recollection of events likewise is of evidentiary value. It was therefore a jury question. (*People* v. *Parks* (1971) 4 Cal.3d 955, 961 [95 Cal.Rptr. 193, 485 P.2d 257].)

■ Defendant contends that his statements were inadmissible because they were given in violation of *Miranda.* He claims that when he asked how long it would take to get an attorney, the questioning should have stopped. As we read the record, and as the trial court heard the voices on the tape, it can fairly be concluded that the waiver was freely and knowledgeably made. Even had defendant properly pursued the issue herein raised, which he did not since no objection was raised below, he would not prevail. Nor is there any substance to the claim that defendant should have initialled each item on the waiver card rather than signing it on the bottom; the tape refutes any ambiguity and there was no *Miranda* violation. As to the claimed effect of drugs and alcohol making the waiver ineffective, the evidence establishes the contrary. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 374 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398]; *People* v. *Conrad* (1973) 31 Cal.App.3d 308, 319-321 [107 Cal.Rptr. 421].)

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.